188 N.J. Super. 175 (1983)
457 A.2d 23
ALPHONSO R. MILLER AND JEROME ROSENBERG, PLAINTIFFS-APPELLANTS,
v.
NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-RESPONDENT. ELIJAH NORWOOD AND THELMA NORWOOD, LILLIAN GILBERT AND MAURICE GILBERT, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1982.
Decided February 2, 1983.
*178 Before Judges MATTHEWS, ANTELL and FRANCIS.
Abraham I. Mayer argued the cause for appellants in A-3641-80-T3 and respondents in A-2635-80-T3 (Mayer & Mayer, attorneys).
Peter M. Burke argued the cause for appellant in A-2635-80-T3 and respondent in A-3641-80-T3 (Young, Rose & Millspaugh, attorneys).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.

*179 I(A)
Plaintiff Alphonso Miller appeals from the trial judge's award of $4,500, representing his insurable interest in property foreclosed by the City of Newark for nonpayment of taxes. He claims the award is inadequate. Plaintiff Rosenberg, who claimed to be a mortgagee on the property, appeals from the judge's finding that he did not have a mortgage or any other financial interest in the property.
When Miller's property was damaged by fire, he sought to recover under a fire insurance policy with defendant. However, prior to the date of the fire the City of Newark had completed tax foreclosure proceedings and obtained a judgment. When defendant learned that the City of Newark was the title owner, it refused to pay on its policy and plaintiffs instituted this action.
In his complaint plaintiff Miller alleged that defendant New Jersey Insurance Underwriting Association (NJIUA) had issued to him a loss-by-fire insurance policy in the amount of $30,000 for the building located at 226 Springfield Avenue, Newark. Jerome Rosenberg was allegedly named as mortgagee in the policy. Plaintiffs alleged that on or about October 21, 1975, while the insurance policy was in force, the building suffered damage by fire and that plaintiff Miller became entitled to the $30,000. Plaintiffs further alleged that defendant had agreed to make payment in the sum of $18,323.50, but that it had thereafter refused to pay that sum. Consequently, plaintiffs sought damages in the alternative of $18,323.50 or $30,000.
In its answer defendant admitted issuance of the policy, the fact of the fire, and that Jerome Rosenberg was named as mortgagee. As a second separate defense, however, defendant alleged that plaintiffs had no insurable interest in the subject property at the time of the loss. The trial judge granted defendant's motion for summary judgment, and this court affirmed *180 (with one judge dissenting), on the basis that Miller had no insurable interest in the property.
The Supreme Court reversed, Miller v. N.J. Ins. Underwriting Ass'n, 82 N.J. 594, 599 (1980), holding that plaintiff Miller had retained an insurable interest in the property although title had been lost to the City of Newark. The court remanded to give plaintiffs an opportunity to prove the value of their interests. Id. at 602-603.
The matter was heard on November 26, December 1 and December 3, 1980 before Judge Yanoff. He granted defendant's motion for dismissal of Rosenberg's claim at the close of plaintiffs' case, finding as fact that there was no mortgage on the subject property. Miller v. N.J. Ins. Underwriting Ass'n, 177 N.J. Super. 584 (Law Div. 1981).
Judge Yanoff assessed Miller's interest in the property at the time of the fire to be $4,500.

I(B)
Plaintiffs Norwood instituted their action alleging that defendant had issued them a policy of insurance for loss by fire on a building located at 584 Springfield Avenue in Newark for the amount of $20,000. Plaintiffs alleged that while the policy was in effect the building had been damaged by a fire, on or about May 30, 1977. They sought judgment awarding the full amount of the policy.
In a second count Lillian and Maurice Gilbert, alleging that they were named as mortgagees on the policy, claimed the proceeds.
Defendant admitted issuance of the policy to the Norwoods and that the property insured had sustained damage by fire on or about May 30, 1977. Defendant also admitted that the Gilberts were shown on the policy as mortgagees. Defendant alleged in separate defenses that plaintiffs had failed to join indispensable parties, to allege a cause of action against it and to comply with the policy conditions precedent and subsequent. *181 Defendant also alleged that plaintiffs had no insurable interest in the subject property at the time of loss.
The trial court's grant of summary judgment in favor of defendant and this court's affirmance were reversed in Miller v. N.J. Ins. Underwriting Ass'n, 82 N.J. 594 (1980). As in Miller, the court found that plaintiffs' insurable interest in the property had not been destroyed because of Newark's tax foreclosure where plaintiffs had not received actual notice of Newark's action. 82 N.J. at 599-600. Thus, the court remanded to give plaintiffs an opportunity "to show the pecuniary value of their interests." Id. at 602.
In an oral decision delivered following testimony on remand, Judge Yanoff found that the Norwoods' reasonable expectancy at the time of fire was $13,332. He also found that Lillian Gilbert was entitled to the amount due on the mortgage out of the Norwoods' recovery. He reserved on plaintiffs' request for prejudgment interest and counsel fees.
In an opinion published at 177 N.J. Super. 584 (Law Div. 1981), Judge Yanoff awarded the Gilberts counsel fees and prejudgment interest, at 588-590, but rejected the Norwoods' similar claims, at 587-588.
In the final judgment dated January 29, 1981 Lillian Gilbert[1] was awarded $5,142.12 plus interest from August 9, 1977 and $1,700 in counsel fees, for a total sum of $8,202.22. The Norwoods were awarded $8,189.88.
In response to objections by counsel, the final judgment was amended on February 26, 1981 so that interest awarded Lillian Gilbert was measured from September 9, 1977 (one month after institution of the action). The total amount of judgment in favor of Gilbert, however, remained unchanged.
*182 Defendant filed a notice of appeal from the whole of the final judgment on March 9, 1981. The Norwoods filed a cross-appeal from the portion of the judgment denying their request for counsel fees, interest and costs.

II(A)
Plaintiffs argue that the trial judge erred in failing to find Rosenberg had a mortgage in the amount of $9,000 on the property, as testified to by both Miller and Rosenberg, and in disregarding the law that the seller has a vendor's lien for the unpaid purchase price equivalent to a mortgage. They argue that defendant waived the statute of frauds defense and that Miller acknowledged a promise to give a mortgage on the subject property. Plaintiffs also point out that the insurance policy names Rosenberg as mortgagee. They contend that denying Rosenberg "his recovery" gives the insurance company a windfall. Finally, they maintain that Rosenberg's vendor's lien is enforceable against defendant because it had notice of the mortgage.
Judge Yanoff granted defendant's motion for involuntary dismissal of Rosenberg's claim at the close of plaintiffs' case. He rejected Miller's and Rosenberg's contentions that an agreement contemporaneous with the purchase agreement had been entered into requiring Miller to give Rosenberg a mortgage on the 226 Springfield Avenue property. Rosenberg had testified that he could not find the second mortgage or the agreement to give one.
Miller testified that the mortgage on Springfield Avenue was in the amount of $9,000 at an interest rate of 7 1/2%. Miller stated that he had not been able to find the mortgage, but that he had lost a lot of papers in the fire. Judge Yanoff made the following comments in deciding the motion:
Now, pursuant to that, it is agreed that a mortgage was executed on the Cedar Avenue property and that mortgage was recorded. Now what I'm being asked to believe is that the lawyer who prepared this instrument which is MP-4 in evidence and the mortgage which was recorded took it  or presided at a *183 closing in which another instrument was prepared. Another mortgage was prepared and that he did not record that mortgage. It is conceded that there is no recorded mortgage on 226 Springfield Avenue. Mr. Rosenberg gets up on the stand and says that the reason it wasn't recorded is because it was anticipated that Mr. Miller was going to take title in his own name. That therefore no mortgage was on the property. That may seem like a good reason to Mr. Rosenberg. It is not a good reason to anybody who knows anything about titles. Certainly a mortgage given by the Harmitch Corporation which was recorded would have priority insofar as the mortgagee is concerned. He was [to] record that mortgage immediately. It is perfectly obvious that Mr. Ebriel knew his business. The instrument in evidence shows it and the mortgage shows it and I don't believe there was any negotiation for a second mortgage or additionally I should point out that this agreement which was signed is sufficient in and of itself. There was absolutely no reason why Miller should give another mortgage on anything. The agreement provides that he gets the stock. He gets certain papers. Apparently he got some cancelled mortgages which were on that property which were cancelled. There was no reason for Miller to give anything more. He got everything that he wanted for the price of $9500 of which $500 was cash.
I find as a fact that there was no agreement. And I find as a fact that there was no mortgage on 226 Springfield Avenue.
We fully concur with Judge Yanoff's factual determination that no second mortgage had ever been prepared or was contemplated by the parties. As Rosenberg undoubtedly knew at the time of sale, the property was already in arrears as to real estate taxes. In addition, the agreement recites that there was an action pending in the Superior Court against the Harmitch Corporation on some occurrence or transaction for which Harmitch had not been insured. Thus, the inference is quite reasonably drawn that the Rosenbergs looked only to Miller's personal residence as collateral for the note. Further support can be found in the fact that during the first two years of plaintiff's payment on the note he was only obliged to pay interest, probably in recognition of the fact that the property was not producing substantial income.
With respect to plaintiff's argument that any insurance proceeds should go to Rosenberg on the basis of Rosenberg's vendor's lien, Judge Yanoff's finding that no second mortgage was contemplated defeats that contention.
*184 Plaintiff's argument that defendant is somehow granted a windfall by this finding is specious. If, in fact, there was an agreement between Miller and Rosenberg as the two allege, Rosenberg's remedy is against Miller.
We agree with Judge Yanoff's findings on this issue.
Miller also argues that the trial judge's award of $4,500, representing his insurable interest, is inadequate and based on findings of fact contrary to uncontradicted evidence. Miller disputes the judge's finding that the property was not occupied at the time of the fire, pointing to defendant's adjuster's estimate of rents for the prior three years as $28,800. He contends that Miller's expectation of continued residency and ownership of the property are supported by (1) the Supreme Court's finding that Miller continued to operate his business and collect rents after the foreclosure; (2) the City of Newark's practice of allowing redemption of property foreclosed for tax delinquency, and (3) Miller's expectation "of exonerating his home from the Rosenberg mortgage by continuing that subject property." He claims that his expectancy was worth at least $18,323.50, which amount the parties agreed represented the amount of damage from the fire, and that the trial judge should have awarded that amount.
In discussing whether Miller had an insurable interest at the time of the fire, the Supreme Court noted that interests in property which are insurable need not rise to legal or equitable title. Miller v. N.J. Ins. Underwriting Ass'n, 82 N.J. at 600. It noted that New Jersey courts have long recognized that an insured retains an insurable interest so long as he has a reasonable expectation of deriving pecuniary benefit from preservation of the property or would suffer direct pecuniary loss from its destruction, and found that Miller did not lose all reasonable expectation concerning the property merely because he had lost title to it. Id. at 600, 602. The court concluded that since Miller had continued to occupy the premises after the fire, operated his furniture business and collected rents, he could reasonably believe *185 his fire insurance policy protected him from loss he might suffer upon destruction of the premises. Id. at 602. Miller's interest was said to be his reasonable expectations in the property, taking account of events subsequent to the time of loss. Ibid.
The court construed language of the insurance agreement, providing that coverage would be "to the extent of the actual cash value of the property at the time of the loss but not ... in any event for more than the interest of the insured" (required by N.J.S.A. 17:36-5.19), as demonstrating that defendant had contemplated insuring against loss less than the full amount of the policy. Id. at 603. The court also found, however, that Newark's letter to Miller, offering to vacate the judgment on payment of the delinquent taxes, "did not create a cognizable expectancy interest in Miller." Ibid. Although the court noted defendant had agreed that $18,323.50 represented the damage to the property, it nevertheless felt it could not determine the value of Miller's interest. Id. at 604.
Although he found Miller's asserted monthly rental roll of $835, which he computed out to $10,000 a year, was exaggerated, Judge Yanoff used that figure for purposes of assessing Miller's interest. He rejected Miller's $7,000 estimate of repair expenses as unsupported. Accepting Miller's allegation of a $10,000 yearly rental income, from that figure the judge subtracted taxes of $2,000, $1,000 for heating, $350 for insurance and $1,000 in mortgage payments. He concluded from this that Miller could have paid the mortgage and the municipal taxes if he had in fact realized a yearly rent roll of $10,000. Assuming a yearly payment of $1,000 on the tax arrearages, Miller could have realized a net income of $4,250 (by our calculation, $4,650). He concluded that Miller's gross income from the building was between $4,000 and $5,000.
Judge Yanoff indicated that he took these post-fire events into account in computing plaintiff's interest: (1) tax payments were never made; (2) no attempt to protect the property was *186 made and (3) the unpaid taxes and interest accumulated to the point where, at trial, they totalled approximately $30,000. Taking all of these facts into account, as well as the fact that Miller had occupied the property since June 1973, and for the next two years had paid no taxes, Judge Yanoff found Miller's interest in the property was $4,500.
Underlying Judge Yanoff's assessment of Miller's interest as $4,500 was the assumption that he had, at best, one more year of "milking" the property before Newark would either demand rental payments or commence summary dispossess action. In light of the testimony of the tax representative of the city that the tenant Horovera did not begin to pay the city rents until 1976, and that a dispossession action was commenced against McNair in August 1976, such assumption is supportable. The city representative testified he had attempted to begin the landlord-tenant relationship between the city and residents of 226 Springfield in October 1975. The dispossess action did not commence until August of the following year because of the backlog of matters in Newark's legal department. In addition, if the representative is believed, Miller's lack of expectation as to continued use of the property is inferable from his removal of improvements from the premises shortly after learning that the city was closing in. He testified that he stopped doing business on the property after the fire.
We believe that Judge Yanoff correctly assessed Miller's financial loss or interest under the broad evidence rule espoused in Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1, 13 (1978).

II(B)
The Norwoods' evidence on the question of their insurable interests in the property was limited to testimony by Elijah Norwood. He had been a general contractor for about 12 years when he purchased the subject property in May 1973. As part of the purchase agreement, Norwood was liable to Macy and *187 Rose Brown in the amount of $4,000, which was paid off before the fire, and on the mortgage given to Lillian and Maurice Gilbert. As of the date of fire, $5,142.12 was still owing on the Gilbert mortgage.
The property consisted of a three-story frame building with a two-story extension which consisted of a furniture store and storage area on the first floor and seven apartments on the other floors. Norwood asserted that the property was not in good physical condition when he purchased it. He had improved the property by putting on a roof, doing woodwork and painting and replacing shingles on the outside; he had changed sinks and repaired the boiler. In the three apartments, vacant at the time he purchased the property, he put in new sinks, did plaster work and painted.
During the five-year period before trial Norwood owned approximately 12 properties in Newark, some of them multiple dwelling units. He did not believe that he ever paid real estate taxes on the subject property, even though he knew the city would foreclose. He stated that his practice on all of his properties was to pay creditors who were threatening, but he denied knowing that the city had foreclosed until the insurance adjuster told him. He said that the city had always previously sent him a notice about taxes being due on his other properties. When he received notices relating to nonpayment of taxes on his other properties, if he did not have the money he would borrow it and pay the city.
He estimated the reasonable value of his repairs and improvements to be approximately $11,000 and, over objection, testified that the value of the property on the date of the fire was $20,000 for the building and $5,000 for the land.
Although he did not keep books on the building to reflect whether or not he was making a profit, he estimated that his annual costs for fuel, taxes, repairs and utilities aggregated $6,298. He estimated that his income from the property was approximately $13,000 annually, assuming a 10% vacancy rate and 10% uncollectible rents.
*188 He inspected the property the day after the fire and found that vandals had taken out the sinks and the oil burner. The roof had collapsed and the upstairs windows were out. After inspecting the property he estimated in his own mind that repairs would cost approximately $32,000. At the time of the fire at least three of his tenants were not paying their rent. After the fire he stopped making payments on the mortgage.
The itemized list of costs and repairs submitted by defendant showed a total cost of $21,585. Included within that figure was a 10% overhead and insurance allocation and 10% builder's profit. Norwood asserted that the figures contained in the exhibit were not erroneous or unreasonable; he stated, however, that all of the necessary plumbing had not been included. After completely reviewing the exhibit Norwood agreed that the exhibit was close to containing all of the items that were damaged. He took issue with the 10% estimates as to overhead/insurance and builder's profit, claiming that 15% allocations for both were more appropriate. Using 15% figures, a total cost of $23,591 would result.
Defendant's director of research reports and statistics stated that the insurable cash value of the building just prior to the loss was $37,510. He said that, assuming an actual loss of $17,839, defendant would have paid, had a proof of loss been submitted, $9,200.
Judge Yanoff found that the Norwoods' interest in the property could be valued at $13,332. The judge arrived at that figure by concluding from the evidence that the cost to restore the building to its condition prior to the fire would have been $20,000. To that $20,000 the judge applied the coinsurance clause as meaning that two-thirds of the above amount was covered by the policy, i.e., $13,332.
Comparing Norwood's testimony to Miller's, the judge was more persuaded that Norwood's testimony was entitled to weight. He was therefore convinced that Norwood could operate the building profitably. He was also convinced that Norwood's *189 failure to pay taxes on the property did not undermine Norwood's assertions of a continuing interest in the property. He commented:
They don't pay Peter until it's a squeaking wheel that gets the grease, and the City of Newark wasn't squeaking. So it doesn't get any payment, and under the circumstances, I believe, also if the City of Newark had squeaked it would have gotten payment just as Brown got paid. He did pay a mortgage, and just as he monthly, I find Gilbert didn't pay  Gilbert, he paid him as little as he could pay and get away with, but he kept him sufficiently happy to stop a foreclosure, and he would have done the same thing with the City of Newark. So he had a substantial expectancy in the possessor [sic] right in that building.
Defendant argues that the trial judge's assessment of the Norwoods' insurable interest in the property was erroneous because he failed to take into account that they were "little more than ... squatter[s]," and that thousands of dollars in back taxes were owed, and that he did not consider the amount owing on the Gilbert's mortgage. Defendant also contended the Norwoods' failure to protect the building subsequent to the fire was inconsistent with a finding of a reasonable expectation of future proceeds from the property, and that the judge erred in finding the restoration costs to be $20,000.
Prior to the Supreme Court's opinion in Miller v. N.J. Ins. Underwriting Ass'n., 82 N.J. at 600, it was well established that in order to recover on a fire insurance policy the insured must have an insurable interest in the property at the time of the fire loss. Hyman v. Sun Ins. Co., 70 N.J. Super. 96, 99 (App.Div. 1961). The claimant need not be absolute owner of the property; an equitable title or interest such that loss would result to the insured if the property were damaged or destroyed constitutes an insurable interest. Ibid.; Kozlowski v. Pavonia Fire Ins. Co., 116 N.J.L. 194, 199 (E. & A. 1936). An insurable interest must be determined from facts existing at the time of loss; such interest is not defeated by unascertained and speculative future events. 4 Appleman Insurance Law and Practice, § 2245 at 167 (1969). Thus, it has been held that a purchaser's failure to make further payments under a contract of sale after the loss has occurred cannot be utilized by the insurer to effect a retroactive abandonment. Id., § 2245 at 169.
*190 The Supreme Court in Miller held that although Miller and the Norwoods had lost title to their properties, they nevertheless retained insurable interests therein. 82 N.J. at 599. Citing Kozlowski, among other cases, the court noted that New Jersey courts have recognized that an insured retains an insurable interest so long as he has a reasonable expectation of deriving pecuniary benefit from preservation of the property, or would suffer a direct pecuniary loss from its destruction. Id. at 600. That insurable interest was to be measured in terms of the insured's reasonable expectations. Id. at 601. The court noted that Miller and the Norwoods had continued to occupy their respective premises and concluded:
From their perspective, they could reasonably believe that their fire insurance policies protected them from losses they might suffer upon destruction of their premises. Their continuing possession left plaintiffs with insurable interests of value. [Id. at 602]
The court therefore held that plaintiffs were entitled to present proof of the value of their interests at a plenary hearing, and that to the extent they could establish their interests had value they could be allowed to recover under their policies. Id. at 603-604.
Judge Yanoff apparently took the cost approach to measure the Norwoods' interest in the property instead of the alternative financial approach taken in Miller. Considering the differences between the way Miller and the Norwoods regarded their respective properties, we find the different approach to be appropriate. In Judge Yanoff's view, Elijah Norwood regarded himself as the legal owner of the property who, although not entirely successful in keeping current with all of his expenses relating to the property, nevertheless did what was necessary to keep title in himself (with the miscalculation as to the City of Newark). We find Judge Yanoff's finding that the Norwoods had a reasonable expectation of nearly unlimited ownership and occupancy of the premises to be supported by the evidence.
As to Judge Yanoff's failure to take into account the thousands of dollars owed in back taxes and the amount of *191 Gilbert's outstanding mortgage, defendant does not provide any support for the argument that these financial aspects are to be computed in determining an insured's interest in property damaged by fire, nor have we found support for that position. To the contrary, it has been held that an insured may recover the entire loss under the policy irrespective of encumbrances. 6 Appleman, Insurance Law and Practice, § 3868 at 347 (1972).
While we do not believe that the amount of back taxes would enter into the computation of plaintiff's insurable interest, the amount of outstanding taxes owed may be considered in determining the reasonableness of plaintiff's expectation in the property. Here, Newark in fact foreclosed against the property, albeit without notice to the Norwoods; thus the future duration of plaintiff's exercise of dominion and control over the property might be viewed as questionable. However, Joseph's testimony that the City of Newark had a practice of permitting redemption of property by owners beyond the time established by a statute, together with Norwood's testimony that he did whatever he needed to do with regard to paying creditors in order to retain his interest, support the finding of reasonable expectation of continued ownership of the property. Defendant's argument that the Norwoods' failure to protect the property against vandalism was inconsistent with a reasonable expectation of continued income from the property is answered simply: the owner's interest is measured before the fire, not after it. 4 Appleman, § 2245 at 167, 169.
We also find Judge Yanoff's assessment of the cost of restoration at $20,000 to be supported by the evidence. As plaintiffs point out, defendant's exhibit had assessed the cost of restoration at $17,839, but Norwood had disputed the 10% allowances for overhead/insurance and builder's profit to be below the customary 15%. Applying 15% allowances to those two figures, Norwood calculated a restoration cost of $23,591. Norwood, who estimated that he repaired approximately 50 houses a year, doing plumbing, plaster, carpentry and roofing work, *192 stated he had not done work on a fire loss building using a 10% overhead figure although he could use that percentage on a new building. He stated that he did not know whether other builders or general contractors worked on a 10% overhead/insurance factor. If the judge accepted Norwood's 15% allocation for either the overhead/insurance or the builder's profits, the total cost of restoration exceeded the $20,000 figure found by him. Since, even applying the 10% figures, defendant's exhibit showed a total cost of over $21,000, we find no mistaken exercise of discretion in Judge Yanoff's use of the $20,000 figure. Since defendant does not attack Judge Yanoff's determination that two-thirds of this amount was inappropriate, we uphold the assessment of $13,332.
Defendant claims the trial judge's reliance on the insurance clause provision that the mortgagee's right to recover was not affected by municipal foreclosure is erroneous since plaintiffs had not argued this prior to trial. Defendant argues Gilbert was required to prove the pecuniary value of her interest in the premises and that there was a failure of proof since there was no testimony on Gilbert's reasonable expectations. Consequently, defendant argues Judge Yanoff erred in awarding Gilbert the amount equal to the unpaid mortgage.
In finding that Gilbert was entitled to the amount of the outstanding mortgage, Judge Yanoff relied on the mortgage clause in the insurance policy. He expressed the view that this clause was intended to protect the mortgagee against the contingency of foreclosure of a superior lien. Miller, 177 N.J. Super. at 588.
If Gilbert were attempting to recover on her own policy of insurance, we would agree with defendant that she would in that circumstance be required to show the value of her insurable interest. As a holder of a mortgage securing a debt, Gilbert clearly had an insurable interest in the property. Insurance Co. v. Woodruff, 26 N.J.L. 541, 550 (E. & A. 1857). Since the court merely made an allocation of Norwood's recovery to *193 Gilbert, we find no arbitrariness in his award to Gilbert. Plaintiff has not objected to the apportioning of his recovery.

III
Defendant next argues that the award of prejudgment interest to Gilbert was inappropriate since the amount of damages was unliquidated and not capable of ascertainment by mere computation. We agree, but not for the reason expressed. Awards of prejudgment are governed by R. 4:42-11(b), which limits such awards to tort claims, unless otherwise provided by law. This conclusion also controls the cross-appeal taken by the Norwoods seeking prejudgment interest.
R. 4:42-9(a)(6) permits the award of counsel fees to a "successful claimant" "[i]n an action upon a liability or indemnity policy of insurance." Judge Yanoff awarded counsel fees to Gilbert but not to the Norwoods. Defendant maintains that Judge Yanoff's refusal to award fees to the Norwoods was appropriate since it was justified in resisting their claim. It also argues that if Gilbert was entitled to an award of fees, the affidavits submitted by counsel are "woefully inadequate" to sustain the court's award of $1,700.
Plaintiffs argue (on cross-appeal) that the court erred in failing to award them fees since the Miller case was not the first decision supporting their right to recover. Plaintiffs also maintain that their $15,000 demand was not exhorbitant in view of Judge Yanoff's assessment of their interest at $13,332.
We believe the question of counsel fees under circumstances such as those presented here is resolved in this court's opinion in Kistler v. N.J. Mfrs. Ins. Co., 172 N.J. Super. 324 (App.Div. 1980), where Judge Lora commented:
To our mind, R. 4:42-9(a)(6) was never intended to apply to a direct monetary claim by an insured against his carrier but only to those situations in which an insured was constrained to bring suit to enforce the provisions of a liability or indemnity policy whereby the carrier was obliged to defend and indemnify. The rule refers to a policy of liability or indemnity and does not by its terms apply to direct loss by the insured, such as might be occasioned by fire, theft or collision, *194 so as to permit a counsel fee award to an insured who brings suit against his insurer to enforce casualty-type direct coverage. Pressler, Current N.J. Court Rules, Comment R. 4:42-9(a)(6). [at 331]
To the extent that Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234 (App.Div. 1975), may be to the contrary, we decline to follow it, although we do not regard the issue to have been decided there. Maros v. Transamerica Ins. Co., 76 N.J. 572 (1978), is sui juris, and cannot be regarded as controlling here.
In Miller (Docket A-3641-80-T3) the judgment is affirmed. In Norwood (Docket A-2635-80-T3) the awards of valuation as to the Norwoods and Gilbert are affirmed, the awards of prejudgment interest and counsel fees to Gilbert are reversed. As modified, the judgment is affirmed. The cross-appeal of the Norwoods is denied.
No costs.
NOTES
[1] The judgment recited that Maurice Gilbert had died after institution of this suit and that Lillian Gilbert, having held the mortgage as a joint tenant with him, survived to the full interest.