202 N.J. Super. 195 (1985)
494 A.2d 339
ELLMEX CONSTRUCTION COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
REPUBLIC INSURANCE COMPANY, A CORPORATION OF THE STATE OF TEXAS, DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1985.
Decided June 17, 1985.
*199 Before Judges McELROY and SHEBELL.
Glenn A. Bergenfield argued the cause on behalf of appellant (Michael F. Chazkel, attorney; Glenn A. Bergenfield, of counsel and on the brief).
Leonard Rosenstein argued the cause on behalf of respondent (Feuerstein, Sachs Maitlin, Rosenstein & Flemming, attorneys; Leonard Rosenstein, on the brief.
The opinion of the court was delivered by McELROY, P.J.A.D.
Plaintiff-appellant (Ellmex) is a builder of residential homes and in May 1980 owned a model home situated on a residential tract it was developing in Wall Township. Defendant-cross-appellant (Republic) is an insurer which issued a "builder's risk" policy covering plaintiff's model home. On May 12, 1980 plaintiff discovered that the house had sustained extensive water damage. Apparently, vandals had stuffed rags into a sink in the bathroom of the second floor master bedroom suite and had turned on the water which overflowed through the second floor and down into the first floor and basement. This matter arises out of a suit by plaintiff for the costs of repairing that damage after Republic disclaimed coverage for the loss. Plaintiff also sued for punitive damages, interest, costs of suit and attorney's fees.
Plaintiff's proofs were that at the time of this loss the house was "basically completed" but lacked landscaping, some tile in the lower lavatory, screens, grills for the windows and a *200 shower head in a bathroom. A certificate of occupancy had not been issued for this dwelling but it was "95% completed." The house was under contract of sale with a closing scheduled in June 1980. For about 30 days prior to the damage a realtor, who had a contract with plaintiff to show and sell this home and others plaintiff was constructing, maintained a sales office in the dining room furnished with a telephone, a desk and some chairs. The realtors were at this office "at least four days a week, definitely weekends and a few days during the week."
The loss was reported to Republic and it had the house inspected by a builder-appraiser who, on July 14, 1980, estimated that the cost of repair would amount to $9,575.79. Plaintiff's estimate was $21,135 and was prepared by its job supervisor from estimates he obtained from plaintiff's subcontractors.
Michael O'Shea, defendant's senior adjuster, testified at trial that Max Halbrecht, Ellmex's president, signed a statement on June 24, 1980 that the house was "completed sometime in February 1980." Halbrecht testified that he did not then tell O'Shea that the house was only 95% finished because he did not think that a determination of whether the house was "95 or 100 percent" complete would influence the recovery.
O'Shea had direct responsibility for passing upon plaintiff's claim. He recommended a disclaimer because "the building had been vacant for a period in excess of 30 days prior to the loss." In doing so he relied upon the following policy provision as to vandalism, a "specified peril," which in pertinent part provided:
9. Vandalism or Malicious Mischief, meaning only the willful and malicious damage to or destruction of the property covered excluding glass (other than glass building blocks) constituting a part of the building or loss by pilferage, theft, burglary or larceny and excluding loss if the described dwelling had been vacant beyond a period of 30 consecutive days immediately preceding the loss.
O'Shea also relied upon Halbrecht's statement that the building was completed in February 1980 as a basis for disclaimer. He did so because another policy provision provided:
1. Vacancy and Unoccupancy: Permission granted for the premises to be vacant or unoccupied without limit of time, except as otherwise provided in this *201 policy for certain specified perils, however, a building in the course of construction shall not be deemed vacant.
Republic's disclaimer, apparently sent to plaintiff, was dated November 26, 1980.
O'Shea testified that because of his past experience with defendant he regarded the word "vacant", as used in the vandalism coverage provision, to mean the house had to be "void of inanimate objects." Nevertheless, he classified this house as vacant, despite the realtor's telephone, desk and chairs, because "[y]ou could not live with just a desk and two chairs. You do not live in a house like that." He stated that when "construction is completed and nothing has been put in there then it is a vacant house" and if it remains so for 30 days, coverage for vandalism ceases. His company has no form of policy to cover a house which remains vacant for more than 30 days and does not insure vacant houses for vandalism because a house vacant for more than 30 days "is more open to kids or practical jokers, whatever, coming in, and why they damage I don't know, but they do." He admitted that under the policy if a house were 99% completed he "would not say the building was done" and would consider it as "in the course of construction" if the builder were "actively pursuing doing that work." We observe that the policy does not impose any such limitation on the phrase, "course of construction."
At the conclusion of the evidence the trial court granted plaintiff's motion for judgment on the issue of defendant's liability to plaintiff under the terms of the policy. The issues of compensatory and punitive damages were submitted to the jury and resulted in a verdict for plaintiff of $17,000 for compensatory damages and $5,000 punitive damages.[1]
*202 Plaintiff brought a post judgment motion for assessment of prejudgment interest on both the compensatory and punitive awards and for attorney's fees. Defendant moved for a judgment notwithstanding the verdict, alternatively for a new trial, and also moved to strike the award of punitive damages. The judge denied plaintiff's motions for interest on the compensatory verdict and for attorney's fees. He denied defendant's motion for a judgment n.o.v. and for a new trial but granted the motion to strike the award of punitive damages. He held that he had erred in submitting that issue to the jury. This determination mooted plaintiff's request for prejudgment interest on that award.
Plaintiff appeals the denial of prejudgment interest on the award of compensatory damages, the denial of attorney's fees and asserts the court erred in setting aside the punitive verdict. Defendant cross-appeals contending that the judge erred in holding as a matter of law that its policy afforded coverage for plaintiff's loss.

I
We will first address defendant's cross-appeal. Defendant argues that a fact question existed as to whether the house was still "in the course of construction" because plaintiff's president admitted in his signed statement of June 24, 1980 that the house was "completed sometime in February 1980," but, on the other hand, gave conflicting trial testimony that the house was only 95% completed at the time of loss. We find no merit in this argument and agree with the trial judge's conclusion that the determinative question as to coverage in the factual complex here presented is not whether the house was still "in the course of construction." The coverage here sought was for vandalism and the exclusion defendant asserted was dependent upon whether the building was "vacant beyond a period of 30 consecutive days immediately preceding the loss." The facts relevant to this question were not in dispute and the policy *203 nowhere defined the term "vacant." The task of interpretation was therefore one for the court rather than the jury. Cronan v. Travelers Indemnity Co., 126 N.J.L. 56, 59 (E. & A. 1940); J.G. Ries & Sons, Inc. v. Automobile Ins. Co., 121 N.J.L. 493, 496 (E. & A. 1938); 2 Couch on Insurance, § 15:3 (rev. ed. 1984).
The trial judge took particular note that defendant in writing this policy obviously was aware of two distinct situations, i.e., "vacancy" and "unoccupancy," because it had utilized these words in various places in the policy and therefore "did not mean them to be interchangeable." He noted that the policy gave "[p]ermission ... for the premises to be vacant or unoccupied without limit of time except as otherwise provided in this policy as to specified perils" (vandalism is such a specified peril) but noted that as to coverage for vandalism, the policy exclusion was "triggered" not by unoccupancy but by the vacancy of the building "beyond a period of 30 consecutive days immediately preceding the loss." The judge held that defendant's employment of the word "vacant," when "unoccupied" could have been used, implicated "a concept having nothing to do with people utilizing the building but, rather, has to do with the presence or absence of inanimate objects...." He held that here it was undisputed that the building "was being used by a realtor company, in conjunction with the development of this project, as a model home and sales office and within the building itself was at least a desk, a telephone and some chairs...." This view of the case is understandable. There is authority for the view that "vacant" can connote the absence of inanimate furnishings in a house, while "unoccupied" means the absence of inhabitants. 4A Appleman, Insurance Law and Practice § 2833 p. 489-91 (1969) and cases cited therein.
Plaintiff, however, asserts, and we agree, that this builder's risk policy should not be interpreted as are policies insuring ordinary homeowners. Homeowners' policies may, and usually do, require the insured dwelling to be occupied as a place of *204 abode. Thus, cases dealing with such policies frequently grapple with the question of whether a house containing some furniture or one periodically inhabited is "vacant" or "occupied." This is a builder's risk policy. The insured sought coverage for the construction of a house and its possession by the builder until it was disposed of by sale to another. This expectation, reasonable in the circumstances, is entitled to the measure of protection necessary to fulfill it. Gerhardt v. Continental Ins. Cos., 48 N.J. 291, 296-297 (1966). Courts have "properly molded their governing interpretative principles with that uppermost in mind." Allen v. Metropolitan Life Ins. Co., 44 N.J. 294, 305 (1965). Clearly, the insurer has the right to limit the extent of coverage and to exclude particular types of liability but, in order to effectively do so, the exclusion must be unequivocal. Gerhardt, 48 N.J. at 295-296; Bauman v. Royal Indem. Co., 36 N.J. 12, 21 (1961).
Defendant urges that because the declaration page of the policy describes the "property covered" as "a one (1) family frame dwelling in the course of construction with privilege to complete and occupy," the word vacant as used in the exclusion of coverage for vandalism must mean that when the building is completed and not occupied as a dwelling for 30 consecutive days, coverage for that kind of damage ceases on the 31st day. The manifest fault in this argument is that the exclusion does not so define the word vacant, nor does the policy elsewhere place such an interpretation upon that word. Defendant could have so phrased its exclusion but did not. It is settled that "in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question...." Mazzilli v. Acc. & Cas. Ins. Co. of Winterhur, 35 N.J. 1, 7 (1961). We will not rewrite this contract. Even if the language used was capable of the meaning defendant seeks, where another interpretation favorable to the insured reasonably can be made that construction must be applied. Lundy v. Aetna Cas. & Ins. Co., 92 N.J. *205 550, 559 (1983). Defendant seeks to have us liberally interpret its exclusion when we are otherwise bound to apply the principle "that if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is in order." Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970).
One further observation should be made. In our judgment, it is of little moment in the factual complex here presented whether the words vacant and unoccupied may be construed as having the same or different connotation. The trial judge may have struggled unnecessarily to make the distinction between occupants and inanimate objects. The undisputed proofs are that the building was used four days out of every week in the 30 consecutive days preceding this vandalism loss by realtors who thus physically occupied the house part of the time. Their furnishings, however meager, were there all of that time. Defendant, in drafting this exclusion, did not require that in order for the premises to be considered not vacant but occupied such occupation must be for 24 hours of every one of the 30 consecutive days.
We affirm the determination by the trial judge that as a matter of law coverage was afforded for this vandalism loss.

II
Plaintiff contends that the trial judge erred in denying its right to claim punitive damages by vacating the punitive damage award. We affirm the judge's decision to do so.
Upon reflection, the judge concluded that he had erred in submitting the punitive damages issue to the jury. He determined that there was here no evidence that the insurer acted "deviously or in bad faith," that the case involved "a close question" and that defendant and plaintiff held "an honest difference [as to] the meaning of the policy language." He determined that defendant's delay in failing to pay the claim or to disclaim "did not constitute an egregious circumstance."
*206 On this appeal, plaintiff's brief asserted that because it and defendant occupied the roles of insured and insurer under a first party insurance contract, New Jersey courts recognize that "a special relationship" existed; that defendant owed plaintiff a fiduciary duty to deal with plaintiff as though defendant were plaintiff's agent in resolving the question of coverage, and that any breach of that duty would serve as a basis for a claim for punitive damage.
At oral argument, however, plaintiff conceded that the circumstances of this case presented no basis for concluding that any special relationship existed and plaintiff abandoned its theory that defendant was its fiduciary in determining what was essentially a matter of coverage interpretation. This concession is consistent with the decision in Kocse v. Liberty Mutual Ins. Co., 152 N.J. Super. 371, 378 (Law Div. 1977). There, the court noted that a fiduciary duty may arise between an insurer and its insured in special circumstances. See, e.g., Rova Farms Resort Inc. v. Investors Ins. Co., 65 N.J. 474, 492 (1974) (insurer by reserving to itself the right to settle a third party claim makes itself the agent of the insured and the relationship, in that circumstance, "is one of inherent fiduciary obligation"). The Kocse decision, however, correctly noted:
It is questionable whether such reasoning could be applied to all of the dealings between the parties. The mere presence of a fiduciary duty regarding one aspect of the insurance contract does not necessarily require that such a duty govern all aspects of the agreement. See Baxter v. Royal Indem. Co., 285 So. 2d 652 (Fla.D.Ct.App. 1973). Certainly, an insurer's task of determining whether the insurance policy provided coverage of an accident cannot be deemed to give rise to such a duty on the part of the insurer. The parties, in this respect, are merely dealing with one another as they would in a normal contractual situation. They are not acting as principal and agent. Thus, the company is only required to fulfill the ordinary contractual duties imposed by the insurance agreement. [152 N.J. Super. at 378]
See also, Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358, 364 (App.Div. 1983) (in which we held that a carrier was not acting as its insured's agent in determining whether she was entitled to PIP benefits).
*207 Having made the concession noted, plaintiff nevertheless argued that this case is one of egregious circumstances such as will fall within the exception to the general rule that punitive damages are not available in contract cases. Here, plaintiff bases its argument upon dicta in Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437 (App.Div. 1976) certif. den. 71 N.J. 503 (1976). In that case this court held that the facts of the case did "not furnish the basis for a finding of the type of wrongful, malicious conduct which could support a claim for punitive damages even if the doctrine [of punitive damages] were extended to contract actions." Id. 141 N.J. Super. at 452. In passing to this ultimate conclusion, however, the Sandler court observed that although punitive damage awards are normally restricted to tort actions, there "may arise a case involving such an aggravated set of facts that punitive damages might be appropriate regardless of the contract form of the cause of action and even though it may be beyond the scope of the recognized exceptions in the adjudicated cases." Id. at 451.
The foregoing observations in Sandler clearly are dicta and that case and other New Jersey decisions furnish no authority for a conclusion that punitive damages will be imposed in an insurance contract action such as this. See, e.g., Milcarek, 190 N.J. Super. at 364; Kubiak v. Allstate Ins. Co., 198 N.J. Super. 115 (App.Div. 1984) (a case which adopts Milcarek's views); Garden State Comm. Hosp. v. Watson, 191 N.J. Super. 225, 226-228 (App.Div. 1982) (where the notion is rejected out of hand), and Kocse, 152 N.J. Super. at 378-379 (where the Law Division, in dicta, merely recognizes that "possibility" without specifically noting that Sandler's observations are equally dicta). Plaintiff urges that we should reconsider and asserts the California rule of Fletcher v. Western National Life Ins. Co., 10 Cal. App.3d 376, 89 Cal. Rptr. 78 (D.Ct.App. 1970) and Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (Cal.Sup.Ct. 1973) as persuasive authority.
*208 We see no need to consider the question of whether punitive damages should be available to this plaintiff. The trial court correctly concluded that this case is one where there was an honest difference as to the meaning of policy language and the mere fact of delay did not constitute an egregious circumstance. This case, like Milcarek, presented nothing more than "a traditional breach of contract grounded in a mistaken notion of legal duty." 190 N.J. Super. at 365. The matter was not one for jury concern even assuming, arguendo, that the legal right to punitive damages is presently a right recognized in this jurisdiction.

III
The trial judge's denial of prejudgment interest to plaintiff on the $17,000 compensatory award was a decision reluctantly rendered because he felt the decision in Miller v. N.J. Underwriting Ass'n, 188 N.J. Super. 175, 193 (App.Div. 1983), certif. den. 94 N.J. 508 (1983) required him to do so. He balanced the equities of the matter and concluded it was obvious that if the insurer "lost the coverage question" some amount of money would have to be paid to its insured. He regarded it as inequitable to deny interest to a party who is deprived of money due under a contract where "the other side had the benefit of that money for a period ... up until the time of judgment" and had the right to invest that money. The judge stated, that "[i]f it were not for Miller I would be inclined, very frankly, to exercise equitable powers to award prejudgment interest." The judge concluded:
the builder was deprived of the money and had to go on and continue his own business without the benefit of that money for a period of time. However, I am bound by Appellate Division decisions and I think I must be particularly bound by one so recent as Miller, where it states very flatly the thought of that ... part of the Appellate Division, that it would be inappropriate under the circumstances of the Miller case to award prejudgment interest.
The Miller decision denied prejudgment interest in a suit by an insured on a fire insurance policy. The decision merely states, without explanation, that

*209 [a]wards of prejudgment [interest] are governed by R. 4:42-11(b), which limits such awards to tort claims, unless otherwise provided by law. [188 N.J. Super. at 193].
We can understand this trial judge's dilemma. Taken at face value, the foregoing pronouncement in Miller seems to ignore years of settled law holding (at least where the contract claim is for a liquidated amount) that although prejudgment interest is not a matter of right, it is allowable as within the broad discretion of a trial judge to accomplish justice in accordance with equitable principles. See Deerhurst Estates v. Meadow Homes, Inc., 64 N.J. Super. 134, 155 (App.Div. 1960), certif. den. 34 N.J. 66 (1961) and the cases therein cited. See also, Manning Engineering, Inc. v. Hudson Cty. Park Comm'n., 71 N.J. 145, 159 (1976), vacated 74 N.J. 113 (1977); Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 131 (1976) and Tobin v. Jersey Shore Bank, 189 N.J. Super. 411, 414 (App.Div. 1983).
We prefer to regard the broad statement in Miller as not intended to effect such a sweeping change in settled law and one not to be taken literally. We agree with the view taken in Entron Inc. v. Affiliated FM Ins. Co., 578 F. Supp. 334, 337 (E.D.N.Y. 1984), aff'd, 749 F.2d 127 (2nd Cir.1984) where Miller's interpretation of R. 4:42-11(b) was regarded as "unduly mechanical in light of Busik v. Levine. ..." Rule 4:42-11(b) is by its terms intended to address, and one hopes to solve, problems of court congestion peculiar to tort suits. Busik v. Levine, 63 N.J. 351, 359-60, 374 (1973). Busik clearly states that "the adoption of the rule does not foreclose holders of other unliquidated claims from contending the circumstances which attend their scene are so like the circumstances here involved that interest should also be allowed to them." Id. at 374. We will put the question to rest for the benefit of the trial judge who here felt compelled to deny prejudgment interest because of Miller's inadvertent pronouncement, and for other judges who might be led to take that judicial statement as mandatory. Rule 4:42-11(b) was intended to require an award of prejudgment interest in tort actions "except where provided *210 by statute with respect to a public entity or employee and except as otherwise provided by law," or in "exceptional cases" where "the court may suspend the running of such prejudgment interest." It is not intended to affect other actions where equitable reasons require an award of prejudgment interest. Busik, 63 N.J. at 374.
This leads us to the question of whether plaintiff may be awarded prejudgment interest where its claim was unliquidated. Busik instructs us that in this state the principles controlling prejudgment or post-judgment interest "have always been and remain judge-made." 63 N.J. at 356. For years our case law rule has been that prejudgment interest "should not be allowed where the damages are unliquidated and not capable of ascertainment by mere computation, or where serious and substantial controversy exists as to the amount due under a contract." Jardine Estates v. Donna Brook Corp., 42 N.J. Super. 332, 341 (App.Div. 1956); Utica Mut. Ins. Co. v. DiDonato, 187 N.J. Super. 30, 43 (App.Div. 1982); Deerhurst Estates, 64 N.J. Super. at 153-154. An award of prejudgment interest has traditionally been denied where damages are unliquidated "because the person who is liable for the debt does not know the sum he owes and cannot be in default until the amount he owes is determined by judgment." Kamens v. Fortugno, 108 N.J. Super. 544, 549 (Ch.Div. 1970). These concepts have been eroded over the years, sometimes sub silentio. Bak-A-Lum is such an example. There the Court, without comment, awarded prejudgment interest to the plaintiff on an unliquidated claim, although, for equitable reasons, it denied the defendant interest on its counterclaim for liquidated damages. 69 N.J. at 130-131. Likewise, in Hankin v. Hamilton Twp. Bd. of Educ., 47 N.J. Super. 70 (App.Div. 1957), where plaintiff was awarded compensatory damages for the reasonable value of architectural services on a quantum meruit basis, interest was allowed. This court simply held:
The test in a case of this kind, where the amount due is not a liquidated debt but where defendant's attitude toward payment of the obligation was substantially *211 unwarranted, is to be found in `considerations of justice and fair dealing.' [Id. at 84].
The clearest tocsin of change is R. 4:42-11(b) where the Court made prejudgment interest the norm for tort claims and included that most unliquidated form of damage, claims for personal injury. Granted, there were special reasons for that change in the law but in Busik the Court, in justifying the new court rule, gave a clear signal that the old distinction permitting prejudgment interest only on liquidated contract claims needed reconsideration. The Court noted that the equitable reasons for an award of such interest on unliquidated claims were as great as the reasons for prejudgment interest on liquidated damages.
We mentioned earlier the judge-made limitation that interest should not be allowed if the claim was unliquidated. That limitation apparently rested upon the view that a defendant should not be deemed in default when the amount of his liability has not been adjudged. But interest is payable on a liquidated claim when liability itself is denied, even in good faith, Kamens v. Fortugno, 108 N.J. Super. 544, 552-553 (Ch.Div. 1970). The fact remains that in both situations the defendant has had the use, and the plaintiff has not, of moneys which the judgment finds was the damage plaintiff suffered. This is true whether the contested liability is for a liquidated or for an unliquidated sum. For that reason, the concept of a `liquidated' sum has often been strained to find a basis for an award of interest.
It is said there is now, in general, a willingness to allow interest on unliquidated claims as justice may dictate. 22 Am.Jur.2d, Damages, § 181, pp. 259-260. In upholding the retrospective application of a New York statute providing for interest in contract actions upon unliquidated damages, the United States Supreme Court observed that `The statutory allowance is for the purpose of securing a more adequate compensation by adding an amount commonly viewed as a reasonable measure of the loss sustained through delay in payment,' and that `It has been recognized that a distinction, in this respect, simply as between cases of liquidated and unliquidated damages, is not a sound one.' Funkhouser v. J.B. Preston Co., 290 U.S. 163, 168, 54 S.Ct. 134, 136, 78 L.Ed. 243, 246 (1933). [63 N.J. at 358-359]
Several federal court decisions have essentially concluded that the evolution has taken place and have noted that New Jersey law awards prejudgment interest on claims for both liquidated and unliquidated damages in accordance with equitable principles. Chatlos Systems, Inc. v. Nat. Cash Register Corp., 670 F.2d 1304, 1314-1315 (3rd Cir.1982), cert. dismissed, 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323 (1982); Buono *212 Sales, Inc. v. Chrysler Motors Corp., 449 F.2d 715, 723 (3rd Cir.1971); W.A. Wright, Inc. v. KDI Sylvan Pools, Inc., 569 F. Supp. 589, 593 (D.N.J. 1983); Entron, Inc. v. Affiliated FM Ins. Co., 578 F. Supp. 334, 336 (E.D.N.Y. 1984), aff'd, 749 F.2d 127 (2nd Cir.1984); Coleco Industries, Inc. v. Berman, 423 F. Supp. 275, 323 (E.D.Pa. 1976). Entron in particular presents a comprehensive review of the gradual statewide development of a permissive judicial attitude toward awarding prejudgment interest in unliquidated damage claims. 578 F. Supp. at 335-338. The opinion of the second circuit in Entron predicts that:
the New Jersey Supreme Court would allow prejudgment interest on claims for unliquidated damages when considerations of justice and fair dealing so dictate, notwithstanding the possible negative implications of Rule 4:42-11. [749 F.2d at 132].
The issue is squarely before us. The reasoning applied in Busik by our Supreme Court has application here and requires us to consider the claim for prejudgment interest.
Although it can be said that the jury found plaintiff's estimate of damage to be approximately $4,000 too high, it is equally true that it found defendant's estimate to be about $7,000 short of the mark. Experience with claims made under policies of the type here considered demonstrates that this kind of disparity between estimates made for an insured and those of the insurer are not uncommon. This frequent difference of opinion is also the reason why it would be unrealistic to regard an insurer in this type of first party claim as a fiduciary of its insured. Where there is no contest as to coverage those differences are frequently compromised; that is why defendant's employee, O'Shea, bears the title of senior claims adjuster. Here, the defendant's view was that the exclusion controlled the question of coverage and plaintiff thus had no use of the monies actually due while that issue was litigated. The Court in Busik observed that "interest is payable on a liquidated claim when liability is denied, even in good faith." 63 N.J. at 358. The equitable purpose of an award of prejudgment interest is compensatory, "to indemnify the claimant for the loss of *213 what the moneys due him would presumably have earned if the payment had not been delayed." Ibid. Whether the claim be liquidated or not is, under the Busik rationale, of no realistic importance. This is especially true where the question interfering with disposition of the claim is not the inability of the parties to agree upon the value of the claim but is rather an argument as to coverage. "The fact remains that in both situations the defendant has had the use, and the plaintiff has not, of moneys which the judgment finds was the damage plaintiff suffered." Id. at 359. In the circumstances here presented, the equities favor plaintiff and prejudgment interest should be awarded. We are not to be understood as holding that this will be true in every contest between insurer and insured. Where the contest is legitimately one as to the amount of damage sustained and the reasonable cost of repair, the equities indeed may favor the insurer.
The final problem involved in this issue is to resolve the point from which prejudgment interest should be calculated. Plaintiff urges we should fix that date as of the time the claim was denied, presumably November 26, 1980. Although a date fixed at a reasonable time after defendant's receipt of plaintiff's sworn proof of loss might be appropriate, we will adopt plaintiff's suggestion.

IV
Lastly, plaintiff challenges the trial court's denial of counsel fees. Plaintiff premises its right to fees upon R. 4:42-9(a)(6) which provides in pertinent part:
(a) Actions in Which Fee Is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except ...
(6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant.
This rule has repeatedly been interpreted as having application, as its terms provide, to actions "upon a liability or indemnity policy of insurance" and not to actions upon other types of policies for direct losses. Vesley v. Cambridge Mut. Fire Ins. *214 Co., 189 N.J. Super. 521, 522 (App.Div. 1983), aff'd by an equally divided Court, 93 N.J. 323 (1983) (a fire loss); Miller v. N.J. Insurance Underwriting Ass'n, 188 N.J. Super. 175, 193-94 (App.Div. 1983) certif. den. 94 N.J. 508 (1983) (fire policy suit); Kistler v. N.J. Mfgs. Ins. Co., 172 N.J. Super. 324, 328-29 (App.Div. 1980) (suit for automobile collision coverage); Karl v. New York Life Ins. Co., 154 N.J. Super. 182, 187-188 (App.Div. 1977) (suit for accidental death benefits under a life insurance policy). Compare, Maros v. Transamerica Ins. Co., 76 N.J. 572 (1978) (counsel fees allowed in suit for personal injury protection benefits) and Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 245-46 (App.Div. 1975) (award of counsel fees affirmed in suit for value of lost jewelry under a homeowner's policy).
We affirm the trial judge's denial of counsel fees. As did our colleagues in Miller, we decline to follow the holding in Corcoran to the extent it appears to authorize the award of counsel fees pursuant to R. 4:42-9(a)(6). 188 N.J. Super. at 194. The Supreme Court decision in Maros permitting counsel fees on a suit for PIP benefits, and a decision by this court to the same effect in Van Houten v. N.J. Manufacturers Ins. Co., 170 N.J. Super. 415, 417 (App.Div. 1979), can only be regarded, as they were in Kistler, as the products of "different considerations of public policy." 172 N.J. Super. at 331. See also, Miller, 188 N.J. Super. at 194 (court regarded the Maros decision as "sui juris" and not controlling on the issue before the court).
The language of R. 4:42-9(a)(6) is unambiguous and needs no interpretation. A pronouncement of legal principle by our Supreme Court on a question such as this, whether by rule or decision, is final and binding. The denial of counsel fees to plaintiff is affirmed.

V
The judgment of the Law Division is affirmed except as to the denial of prejudgment interest. That portion of the judgment *215 is reversed. The matter is remanded to calculate the amount due and for the entry of an amended judgment awarding prejudgment interest to plaintiff.
NOTES
[1] The jury actually awarded $11,900 in punitive damages, a figure the forelady explained included interest. The judge instructed that any punitive award could not include interest and required the jury to retire and reconsider that part of the verdict. They did so and returned in three minutes with a punitive verdict of $5,000. Neither party challenges this procedure or its result.