NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3454-12T3

ALEXANDER BARDIS and
MONICA BARDIS,

     Plaintiffs-Appellants,

v.

KITTY STINSON, STINSON
CLAIMS SERVICES, and
CUMBERLAND INSURANCE GROUP,

     Defendants-Respondents.

<div style="border:1px solid black;">

**APPROVED FOR PUBLICATION**

**February 19, 2016**

**APPELLATE DIVISION**

</div>

_____

Argued December 4, 2013 — Decided October 8, 2014

Before Judges Sapp-Peterson, Maven and
Hoffman.

On appeal from the Superior Court of New
Jersey, Law Division, Monmouth County, Docket
No. L-5738-11.

Constantine Bardis argued the cause for
appellants (Law Offices of Constantine Bardis,
LLC, attorneys for appellants; Mr. Bardis, of
counsel and on the brief).

Jacqueline Cuozzo argued the cause for
respondents (Methfessel & Werbel, attorneys
for respondents; Ms. Cuozzo and Marc L.
Dembling, on the brief).

    The opinion of the court was delivered by

MAVEN, J.A.D.

Plaintiffs Alexander Bardis and Monica Bardis appeal from the January 25, 2013 Law Division order granting summary judgment in favor of defendants Kitty Stinson, Stinson Claims Services (collectively Stinson), and Cumberland Insurance Group (Cumberland) (collectively Defendants). The trial court found there was no coverage under plaintiffs' homeowner's insurance policy for the collapsed basement wall and other damages to their home allegedly caused by "hidden decay." The court also rejected plaintiffs' argument that "hidden defects" allegedly resulting from the faulty construction meant the same as "hidden decay," and were thereby covered losses under the policy. We find a question of fact regarding causation, and ultimately coverage, and therefore, reverse and remand.

I.

We view the facts and all reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Plaintiffs are the owners and residents of a home insured by Cumberland since 2008. The policy for general liability and commercial dwelling insurance, provided coverage for "direct physical" losses caused by, among other things, damage to a building caused by the weight of ice, sleet or snow. A supplemental provision provided further coverage for the "collapse

2

of a building or any structural part of a building that ensues" as a result of "hidden decay, unless such decay is known to an _insured_ prior to the _collapse_." (Italicized in original) The supplemental provision also provided coverage for the collapse of a building caused by the "[u]se of defective material or methods in construction or repair if the _collapse_ occurs during the construction or repair."

On December 26, 2009, the right basement wall in plaintiffs' old, single-family home collapsed. The basement had been added to the home approximately twenty years earlier. Plaintiffs filed a property loss claim with Cumberland which hired Stinson, an independent insurance adjuster, to determine whether plaintiffs' insurance policy covered the damage to their property. In a letter dated January 19, 2010, Stinson informed plaintiffs that their loss was not the result of a peril or cause of loss covered by their policy. The claim was specifically declined because "the damages sustained are a result of surface and subsurface ground water, weight of ice, sleet, snow and collapse." The letter referred to the relevant portion of the policy that sets forth the exclusions upon which the denial was based. "Section ID, Losses Not Insured, Paragraph 14" reads:

> WEIGHT OF ICE SLEET, OR SNOW, AND RELATED
> DAMAGE, AND COLLAPSE EXCLUSION

3

> Damage to a . . . foundation . . . retaining
> wall . . . caused by:
>
> A. Freezing, thawing, pressure or weight of
> ice, sleet or snow.
>
> B. Collapse, other than collapse of a building
> or any structural part of a building.

Stinson based its decision, in part, on the investigation of Sinan S. Jawad, a structural engineer. Jawad inspected plaintiffs' property on January 5, 2010. In his report, he noted there had been "a significant rain storm and melting snow in the region on the loss date." He defined hydrostatic pressure as "the pressure of the soil and the water in the soil on the wall." The amount of pressure placed on a structure depends upon the type of soil present, as well as on the amount of water in the soil. Jawad opined that "hydrostatic pressure, water, damaged the wall." With respect to the structure of the property, Jawad reported that the basement had been added years after the original construction, and built over the crawl space. He noted the block walls used to construct the basement are rarely used in modern construction because they are prone to strength and water infiltration problems. Further, the block walls are not strong in resisting hydrostatic pressure. He also noted the basement was built without the required underpinnings, which would violate present-day construction standards.

4

Plaintiffs retained structural engineer Michael Pierce to conduct a preliminary visual inspection. Pierce conducted his inspection on July 26, 2010, after which he concluded as follows:

> The collapse revealed that the construction of the masonry sidewall consisted of a concrete masonry unit foundation wall "sistered" within the basement and alongside a shallow bearing wall, which directly supported the floor platform. It appears that the interior "sister wall" was installed to form the basement space after original construction was completed. A masonry chimney is located adjacent to the collapsed section of wall and the chimney foundation appeared to bear [sic] at the approximate level of the shallow outer foundation wall.
>
> It is my professional opinion within a reasonable degree of engineering certainty that the cause of the collapse was a lateral bending failure due to excessive horizontal loads. The original, shallow foundation wall, the footing of the adjacent chimney, and retained soil below the shallow wall, applied a surcharge loading to the sister wall. The excessive loading caused lateral displacement of the sister wall, which undermined the original shallow masonry foundation.

On December 14, 2011, plaintiffs filed a complaint in the Law Division, alleging the basement wall collapsed due to hidden decay and chimney weight deterioration causing $175,000 in damages. Plaintiffs further claimed their insurance policy expressly covered the cost of damage resulting from "hidden decay." Plaintiffs demanded judgment against defendants in that amount, "with interest and costs of suit." Defendants filed an answer on

5

January 11, 2012. They asserted, among other things, that plaintiffs' claim "is barred because the loss in question is excluded from the policy of insurance."

Plaintiffs and defendants moved for summary judgment. Plaintiffs also moved to strike Jawad's report as a net opinion. On January 25, 2013, the court ruled on the motions. The trial court granted plaintiffs' motion to strike Jawad's report and then addressed defendant's motion.

The court then issued an oral decision, granting summary judgment in favor of defendants. The court found that plaintiffs' sole support for their argument that "hidden decay" caused the collapse, was defendants' expert testimony, which had been stricken. The court found plaintiff provided no other evidence that suggests the collapse was caused by decay or erosion.

The court also rejected plaintiffs' argument to interpret the term 'hidden decay' to include hidden construction defects. The court found the plain meaning of the term "decay" is not the same as "defect." Further, the policy's failure to define the term "decay" did not render it an ambiguous term. Moreover, the court found that neither expert attributed the cause of the collapse to decay. Instead, both experts indicated that the collapse "was allegedly caused by defective construction of the wall and foundation together with hydrostatic pressure and the property's

6

shallow masonry chimney foundation." The policy provided that coverage will only extend to collapses due to specific listed sources, none of which is "soil and hydrostatic pressure."

Finally, the court found the policy specifically provided for coverage of damages caused "by the use of defective material or methods of construction, if the collapse occurs during construction or repair." The court determined that the construction occurred before the collapse, and therefore, the collapse is not covered by the collapse provision. This appeal followed.

We apply a de novo standard of review when evaluating whether summary judgment was proper. Brill, supra, 142 N.J. at 540. As does the motion judge, we first decide if there is a genuine issue of material fact, and if none, whether the moving party is entitled to judgment as a matter of law. Ibid.; Prudential Prop. Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998); R. 4:46-2(c).

Plaintiffs argue that the wall's collapse after standing for so long is evidence that the wall gradually declined in strength over the twenty years since its construction, consistent with hidden decay, a covered loss. Although the policy does not define "hidden decay" plaintiffs contend the court erred by interpreting the term too narrowly, to exclude hidden construction defects, and

by refusing to accord the plain and ordinary meaning of the term. Plaintiffs contend that by doing so, the judge improvidently decided issues of material fact, rather than restricting his decision to whether such issues exist. We agree.

## II.

We start our analysis by reference to well-settled principles of insurance law. As a threshold matter, the interpretation of an insurance contract is a question of law, Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 260 (App. Div. 2008), certif. denied, 199 N.J. 133 (2009), which "we decide independent of the trial court's conclusions." Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004).

When interpreting the contract, we "examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001)). However, where an ambiguity exists, it must be resolved against the insurer. DiOrio v. New Jersey Manufacturers Ins. Company, 79 N.J. 257, 269 (1979).

If the controlling language of the policy will support two meanings, one favorable to the insurer and one favorable to the insured, the interpretation supporting coverage will be applied. Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 243 (App.

8

Div. 1975).  Yet, an insurance policy is not ambiguous merely because two conflicting interpretations have been offered by the litigants.  Rosario v. Haywood, 351 N.J. Super. 521, 530-531 (App. Div. 2002) (citing Powell v. Alemaz, Inc., 335 N.J. Super. 33, 44 (App. Div. 2000).  A genuine ambiguity exists when the "phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage."  Lee v. General Accident Ins. Co., 337 N.J. Super. 509, 513 (App. Div. 2001).

Even if a particular phrase or term is capable of being interpreted in the manner sought by the insurer, "where another interpretation favorable to the insured reasonably can be made that construction must be applied." Ellmex Constr. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195, 204 (App. Div. 1985), certif. denied, 103 N.J. 453 (1986).  In this regard, coverage clauses should be interpreted liberally, whereas those of exclusion should be strictly construed. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970); Ellmex Constr. Co., Inc., supra, 202 N.J. Super. at 205.  Finally, our analysis also requires that any interpretation "fulfill the expectations of the parties." Passaic Valley Sewerage Com'rs v. St. Paul Fire and Marine Ins. Co., 206 N.J. 596, 608 (2011).

9

III.

The question presented here is whether the basement collapse was caused by "hidden decay," and if so, do any policy provisions apply that would except or exclude coverage under the facts of this case. "Section 1B — Supplemental Coverage, Paragraph 2" provides coverage in the event of a collapse, and reads

> Coverage is extended to cover the <u>collapse</u> of a building or any structural part of a building that ensues only as a consequences of the following:
>
> . . . .
>
> B. Hidden decay, unless such decay is known to an <u>insured</u> prior to the <u>collapse</u>.
>
> . . . .
>
> F. Use of defective material or methods of construction or repair if the <u>collapse</u> occurs during the construction or repair.
>
> [(Italicized in the original).]

The policy does not define "hidden defects" or "hidden decay."

Plaintiffs argue the term "hidden decay," given its "plain and ordinary meaning, encompasses the cause of the collapse. Merriam-Webster's Dictionary[1] defines "decay" as follows:

> 1) to decline from a sound or prosperous condition

---

[1]    MERRIAM    WEBSTER    DICTIONARY,    http://www.merriam-webster.com/dictionary/decay. (Last visited September 12, 2014.)

10

2)    to decrease usually gradually in size, quantity, activity, or force

3)    to fall into ruin

4)    to decline in health, strength, or vigor

5)    to undergo decomposition

Our courts endorse the use of dictionaries or thesauruses to determine the ordinary meaning of words in insurance policies. E.g., Boddy v. Cigna Prop. & Cas. Cos., 334 N.J. Super. 649, 657 (App. Div. 2000) (explaining that a thesaurus can help a court to ascertain the ordinary meaning of a word). Because the Merriam-Webster definition for decay suggested by plaintiffs encompasses a gradual decline in strength, the court should also define hidden decay as a gradual decline in strength to give it its ordinary meaning. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990).

This approach comports with our principle of construing insurance contracts according to the reasonable expectations of the insured. As we explained in Bromfeld v. Harleysville Ins. Co., 298 N.J. Super. 62 (App. Div. 1997), a trial court should consider the reasonable expectations of the insured in determining coverage. Id. at 78. This is so even if the court finds that a policy does not specifically insure the loss. Ibid. The court should also consider "whether the reasonable expectations of the

11

insureds is that their homeowner's policy covers them for such a catastrophe." Ibid. Arguably, plaintiffs could have reasonably expected that their homeowner's insurance policy would cover a gradual decline in strength of their basement wall, followed by its sudden collapse, after it stood for over twenty years.

A careful review of the record indicates support for plaintiffs' claim that a gradual decline in strength within the walls, or "hidden decay" caused the loss. Viewing the evidence in the light most favorable to plaintiffs, it suggests that the collapsed wall gradually declined in strength. The basement was constructed approximately twenty years before the wall collapsed. Pierce opined that the wall's collapse was caused by a "lateral bending failure due to excessive horizontal loads." He explained that "excessive loading caused lateral displacement of the sister wall, which undermined the original shallow masonry foundation."

The trial court found that because the expert evidence established that the wall did not collapse during construction, even though improper construction methods were used years earlier, the loss was excluded from coverage, consequently no genuine issue of material fact existed. We disagree with that premise.

In Bromfeld, we considered a homeowner's insurance policy containing identical language to the one at bar. Additionally, the facts of that case are strikingly similar to the facts in the

12

present case. There, the plaintiffs-insureds discovered that their basement wall had collapsed after a rainstorm that occurred while seven inches of snow covered the ground. Bromfeld, supra, 298 N.J. Super. at 65. Plaintiffs retained an expert who testified in his deposition that:

> [T]he wall collapsed due to the additional loads applied eccentrically to the foundation wall due to the installation of the wood deck combined with the unusually high snow/ice loads coupled with wind. The wall collapsed catastrophically due to the lack of any available tensile bond strength of the interior shell of the masonry.
>
> [Ibid.]

The plaintiffs' expert also prepared a report that further explained how the recent addition of a deck, which caught the snow, magnified existing structural problems with the basement wall, causing it to collapse. Id. at 65-66. In sum, the plaintiffs' expert opined that the basement collapsed for two reasons: (1) "improper construction methods," Id. at 71; and (2) "the recent construction of a deck [that] transmitted the weight of ice and snow onto the house frame immediately above the foundation, and that pressure upon the exterior face of the wall." Id. at 73.

As in the case at bar, defendants in Bromfeld argued that the policy did not provide coverage because the collapse was caused by improper construction of the deck. Ibid. In relevant part,

13

we rejected that argument, explaining that, "if the actual collapse was caused by the weight of ice or snow, the [snow collapse provision] would appear to cover plaintiffs." We explained that the actual cause of loss constituted a jury question. Ibid.

By analogy, here, the actual cause of loss could have been covered, as hidden decay, or it could have been a loss specifically excluded from coverage, improper construction methods. Following the rationale in Bromfeld, the fact that plaintiffs' basement wall was built using improper construction methods twenty years ago should not have ended the inquiry as to the existence of a genuine issue of material fact.

While plaintiffs' theory and interpretation of the term "hidden decay" may not fall squarely within the covered collapses of a building, it also does not fall within any exclusion or exceptions to a peril insured against. Thus, if the collapse was due to poor or defective construction methods used to construct the basement foundation wall system combined with the factor of twenty years of hydrostatic pressure and excessive loads upon the improperly supported foundation walls, then plaintiffs may be covered.

"The natural assumption of a homeowner when he or she purchases a homeowner's policy is to assume that he or she is covered by a comprehensive policy that will protect him or her

14

from an unexpected event, such as a basement collapse." <u>Ibid.</u> at 74; <u>see</u> <u>Campbell v. Norfolk & Dedham Mut. Fire</u>, 682 <u>A.</u>2d 933 (R.I. 1996) (finding a material issue of fact as to whether collapse of portion of basement wall was covered under homeowner's policy based upon ambiguity of material terms employed in homeowner's policy, where ordinary purchaser of policy could have reasonably understood its provisions as insuring against such collapse, even if exclusion required that any loss to foundation result from complete collapse of building).

Certainly, a reasonable jury could infer from Pierce's testimony that the continuous hydrostatic pressure upon the soil around the home caused the wall to collapse at its weak point, where the prior construction joined the masonry chimney to the shallow foundation wall. The jury could also conclude that the wall gradually weakened or decayed before collapsing.

We agree with our dissenting colleague that "one cannot force a square peg in a round hole;" however, because the term "hidden decay" was not defined in defendant's policy, it represents neither a square peg nor a round hole. By not defining the term, defendant failed to seize the opportunity to clearly and precisely delineate the parameters of this coverage. The effect of the motion judge's decision was to write a lesser policy than the one plaintiffs purchased.

15

Moreover, we note the motion judge did not address plaintiff's reasonable expectation argument. "The fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties." Werner Industries, Inc. v. First State Ins. Co., 112 N.J. 30, 35-36 (1988). Our Supreme Court has described the general rule of construction in searching for the reasonable expectations of the insured as follows:

> [I]nsurance policies are complex contracts of adhesion, prepared by the insurer, not subject to negotiation, in the case of the average person, as to terms and provisions and quite unintelligible to the insured even were he to attempt to read and understand their unfamiliar and technical language and awkward and unclear arrangement . . . . We have stressed, among other things, the aim that average purchasers of insurance are entitled to the broad measure of protection necessary to fulfill their reasonable expectations; that it is the insurer's burden to obtain, through its representatives, all information pertinent to the risk and the desired coverage before the contract is issued; and that it is likewise its obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, plain, clear and prominent to the lay[person].
>
> [Harr v. Allstate Ins. Co., 54 N.J. 287, 303-304 (1969).]

Absent unusual circumstances not present here, we cannot imagine a homeowner, who has purchased homeowners insurance, who would not expect the policy to cover a basement collapse. See Bromfield, supra, 298 N.J. Super. at 74.

16

As noted, where the insured's loss can be viewed in two ways, basic principles of insurance law instruct us to interpret coverage provisions broadly, to construe exclusions and limitations narrowly, and require that we view this loss in the manner that brings it within the policy's coverage. E.g., Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272-74 (2001) (citation omitted). And to the extent the policy terms at issue here are ambiguous, long-accepted principles of interpretation applicable to insurance contracts require us to construe this policy language against the drafter, in favor of the insured, and in accordance with the insured's reasonable expectations. See, e.g., Gibson, supra, 158 N.J. at 669-71. The evidence, as viewed at summary judgment, should be construed in favor of coverage under the terms of the policy. A genuine issue of material fact is presented as to the cause of the collapse and the application of the insurance policy.

As there is a bonafide dispute as to the cause of the collapse, that issue must be resolved by a jury. Simonetti, supra, 372 N.J. Super. at 432 (finding factual question existed as to whether rainstorm caused some or all of damage to plaintiffs' home and stating that issues of causation are for jury to resolve). Thereafter, it will be up to the trial court to interpret the policy, and, if necessary, the reasonable expectations of the insureds (plaintiffs). Bromfeld, supra, 298 N.J. Super. at 79.

17

Accordingly, we reverse the grant of summary judgment in favor of defendants and remand for further proceedings consistent with this opinion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-3454-12T3

**SAPP-PETERSON, P.J.A.D., dissenting**

There is no ambiguity in the terms of the commercial dwelling policy issued to plaintiffs. As such, defendants properly denied plaintiffs' claim for first party insurance benefits arising out of a basement wall collapse. I respectfully dissent, substantially for the reasons expressed by Judge David Francis Bauman in his January 25, 2013 oral opinion. I add the following brief comments.

Judge Bauman reasoned, "the plain meaning of the term 'decay' is not the same as the plain meaning of the term 'defect.'" Plaintiffs' expert, Michael Pierce opined:

> [T]he cause of the collapse was a lateral bending failure due to excessive horizontal loads. The original, shallow foundation wall, the footing of the adjacent chimney, and retained soil below the shallow wall, applied a surcharge loading to the sister wall. The excessive loading caused lateral displacement of the sister wall, which undermined the original shallow masonry foundation.

When later deposed, Pierce explained that "this foundation wall had hidden defects that would not have been immediately obvious to somebody doing an inspection inside the basement prior to the collapse." He identified the hidden defects as the "shallow exterior," meaning "the crawl space foundation." He expressed:

> If in fact it was originally constructed as a crawl space, it would have had a shallow exterior foundation wall that only went down to possibly below frost depth. I suspect that

a basement was constructed at this house at a later time, and instead of extending the outside foundation wall to the bottom level of the basement floor, they simply constructed a sister wall on the interior side of the exterior wall. So the exterior wall was not supported at the base of the foundation wall that would be the basement foundation wall.

He opined further that this manner of construction "certainly would not be the proper way of constructing a basement foundation wall system" and testified there were "excessive horizontal loads [coming] from soil pressure on the wall in addition to the surcharge load from the chimney."

Neither in his expert report nor during his deposition did Pierce attribute the cause of the collapse to "decay" much less "hidden decay." Moreover, the opinion on the cause of the building's collapse as expressed by defendants' expert, whose report, plaintiffs successfully moved to bar, also did not attribute the building's collapse to "hidden decay." A "defect" connotes imperfection from the outset, while "decay" connotes a decline from a condition that was originally sound. One cannot force a square peg into a round hole.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

2

A-3454-12T3