**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1451-21

ON-TARGET STAFFING, LLC,

    Plaintiff-Appellant,

v.

ZURICH AMERICAN
INSURANCE COMPANY,

    Defendant-Respondent.

_____

Submitted January 25, 2023 – Decided January 17, 2024

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3339-20.

The Killian Firm, PC, attorneys for appellant (Eugene Killian, Jr., and Dimitri Teresh, on the briefs).

Coughlin Midlige & Garland, LLP, attorneys for respondent (Adam M. Smith and Michael Edward Hrinewski, on the brief).

The opinion of the court was delivered by

VERNOIA, J.A.D.

After four of its employees sued it for injuries they suffered during an automobile accident, plaintiff On-Target Staffing, Inc. (On-Target) sought a defense to the claims from defendant Zurich American Insurance Company (Zurich) under a commercial insurance policy (the policy) Zurich had issued to On-Target. Following Zurich's denial of the requested coverage, On-Target filed this action, asserting claims for breach of contract and a declaratory judgment that it is entitled a defense to the employees' claims under the policy.

On-Target appeals from an order denying its motion for summary judgment on its claims and granting Zurich's cross-motion for summary judgment dismissal of the claims. Having reviewed the summary judgment record, the parties' arguments, and the applicable legal principles, we affirm the court's order denying On-Target's motion for summary judgment, reverse the order granting Zurich summary judgment, and remand for further proceedings.

I.

Angelica Cordova, Ronald L. McCormick, Joseph Wardell, and Miguel Montas (the underlying plaintiffs) filed separate complaints (the underlying actions) against On-Target alleging that on July 1, 2016, they were employed by On-Target, a temporary staffing company, to provide services at the worksite of

one of its clients, Mr. Cookie Face, Inc.[1]  The complaints further averred the underlying plaintiffs were transported to and from the worksite in a van owned and operated by Manuel Perez, who the complaints variously claimed was On-Target's agent, employee, or servant.

The complaints alleged Perez negligently operated the van during his transport of the underlying plaintiffs from the worksite and caused an accident resulting in their claimed injuries.  The complaints averred On-Target was negligent in the maintenance and operation of the van and is vicariously liable for Perez's negligence.  The court consolidated the separate underlying actions into a single proceeding.

The Underlying Plaintiffs' Worker's Compensation Claims

Prior to filing their separate complaints, the underlying plaintiffs sought Worker's Compensation benefits.   On-Target initially opposed the requests, but

---

[1]   In support of its summary judgment motion, On-Target included a fifth complaint—filed by Guemard Aime—against On-Target (the Aime Complaint) as an exhibit to its counsel's certification.  In its statement of material facts submitted in support of its summary judgment motion, see R. 4:46-2(a), On-Target does not refer to the Aime complaint or include it in what it characterizes as the "underlying actions" for which it claimed entitlement to a defense under the policy.  We therefore do not address the Aime complaint as one of the underlying actions for which On-Target claims an entitlement to coverage under the policy other than to note that based on the record presented, we discern no basis to conclude we would consider differently the coverage issues presented as to the Aime complaint.

A-1451-21

after a hearing on Joseph Wardell's Worker's Compensation petition, a Worker's Compensation judge entered an order finding the July 1, 2016 accident "compensable." On-Target later conceded liability for Worker's Compensation benefits to the other underlying plaintiffs, who thereafter collected benefits.

Zurich's Denial of On-Target's Request for Coverage Under the Policy

On-Target first requested a defense from Zurich under the policy for personal injury claims arising from the July 1, 2016 accident in response to a separate suit brought by four other On-Target employees who were also in Perez's van at the time of the accident. Zurich denied that coverage request in a May 19, 2017 letter from its counsel. The letter explained Zurich had determined there was no coverage because Perez's van did not fall within the policy's coverage for "Covered Autos" and the claims against On-Target were otherwise excluded under the policy. The letter noted Zurich would consider additional information related to its coverage determination if it became available. Zurich reserved all rights under the policy.

The record on appeal does not address the disposition of the lawsuit referenced in the May 19, 2017 letter. The underlying actions for which On-Target sought coverage in its complaint against Zurich in this matter were filed subsequent to the letter. In any event, the parties cite the letter as Zurich's initial

4

statement of the reasons for its denial of coverage for the claims made against On-Target by the underlying plaintiffs here.

On-Target Moves for Summary Judgment in the Underlying Actions

In 2020, On-Target first moved for summary judgment in the underlying actions, arguing the underlying plaintiffs' claims were barred under the Worker's Compensation Act (WCA), N.J.S.A. 34:15-1 to -147.[2]  More particularly, On-Target argued the claims were barred under N.J.S.A. 34:15-8, which provides that compensation for an unintentional injury or death of an employee under the WCA constitutes the employee's exclusive remedy against the employer.  See Laidlow v. Hariton Mach. Co., Inc., 170 N.J. 602, 611 (2002) (describing N.J.S.A. 34:15-8 as the "exclusive remedy provision of the" WCA and "the Worker's Compensation bar").

A Law Division judge (the initial judge) denied On-Target's motion, finding in part the WCA did not bar the claims because the passengers in the van—the underlying plaintiffs—"clearly were not employees at the time of the accident," "were not on the job" when the accident occurred, and were not being compensated by On-Target while Perez transported them from the Mr. Cookie

_____

[2]  The record on appeal does not include any of the pleadings or papers filed by On-Target or the underlying plaintiffs in connection with the first summary judgment motion in the underlying actions.

Face, Inc. worksite following completion of their workday. The judge later denied On-Target's motion for reconsideration, and we rejected On-Target's motion for leave to appeal from the court's orders.

Following amendments to the pleadings in some of the underlying actions, On-Target again moved for summary judgment, in part renewing its contention the underlying plaintiffs' claims were barred under the WCA.[3] A different judge (the motion court) granted On-Target summary judgment, thereby dismissing all the underlying plaintiffs' claims. In the statement of reasons supporting its decision, the motion court principally relied on what it found were the "binding" factual findings made by the initial judge in his denial of On-Target's first summary judgement motion in the underlying actions.

The motion court reasoned that the Worker's Compensation bar did not require dismissal of the underlying plaintiffs' claims against On-Target because the initial judge had determined Perez was not "on the job" at the time the accident occurred. The motion court then explained that even if Perez had been working for On-Target as he drove the van when the accident occurred, the Worker's Compensation bar did not require dismissal of the underlying

---

[3] The record on appeal does not include any pleadings or papers filed by the parties in connection with On-Target's second summary judgment motion in the underlying actions.

plaintiffs' claims because the bar is inapplicable to intentional tort claims against an employer. The motion court then incongruously found the underlying plaintiffs did not have a cause of action against On-Target because none had "allege[d] . . . an intentional tort against On-Target."

The motion court also found the underlying plaintiffs' claim that On-Target was vicariously liable for the acts of its alleged servant, Perez, lacked merit because "Perez was not acting within the scope of his employment as he drove the van, On-Target did not intend the accident to happen, and" none of the underlying plaintiffs had "set forth an argument contending the basis of any duty owed by On-Target" to them.

The motion court further found the record did not support a claim "against On-Target as an entity—not as an employer" and concluded "there exists no basis to sue the employer, On-Target, for an accident which occurred outside the scope of the employment of" the underlying plaintiffs. The court entered a July 20, 2021 order granting On-Target summary judgment and dismissing the underlying plaintiffs' claims against it.

A-1451-21

The Underlying Plaintiffs' Motion for Reconsideration

The underlying plaintiffs moved for reconsideration of the July 20, 2021 order.[4] In a written decision, the motion court found it had erred by failing to "fully consider" some of the "findings and discussion" supporting the initial judge's denial of On-Target's first summary judgment motion. The motion court again found it was bound by the initial judge's findings and noted the initial judge determined that the underlying plaintiffs had alleged: they were transported to and from the Mr. Cookie Face, Inc. worksite by an independent contractor, Perez; they were not obligated to use Perez's transportation service; and On-Target had facilitated Perez's transportation of the employees by paying Perez money that On-Target deducted from the underlying plaintiffs' paychecks in accordance with loan agreements On-Target had the employees sign. The initial judge had also found On-Target facilitated the transportation of the underlying plaintiffs by Perez because it "wanted to assure its customers that the workers would get" to the worksites on time.

In granting the underlying plaintiffs' reconsideration motion, the motion court emphasized the initial judge had found that whether On-Target was

---

[4] The record on appeal does not include any pleadings or papers submitted to the court in support of, or in opposition to, the reconsideration motion.

vicariously liable for the negligence of its alleged independent contractor, Perez, presented "a jury question consisting of several factors that must be weighed and evaluated." The motion court determined the initial judge's factual findings required the conclusion that whether On-Target was vicariously liable for Perez's alleged negligence "in his capacity" as On-Target's agent presented a fact issue for a jury. The court therefore granted the underlying plaintiffs' reconsideration motion, vacated its July 20, 2021 order granting On-Target summary judgment, denied On-Target's summary judgment motion, and reinstated the underlying plaintiffs' claims against On-Target.

On-Target Separately Sues Zurich for a Defense Under the Policy

On-Target filed a separate complaint against Zurich seeking a declaratory judgment that it is entitled to a defense under the policy against the underlying plaintiffs' claims and asserting a cause of action for breach of the policy.[5] On-Target claimed it is entitled to a defense under the auto liability provisions of the policy that provide coverage for "non-owned" vehicles.

On-Target alleged it was entitled to a defense based on the factual findings made by the initial judge in his denial of its first motion for summary judgment

---

[5] On-Target's complaint does not expressly seek a declaratory judgment that it is entitled to indemnification under the policy for sums to which it may become obligated to pay to the underlying plaintiffs in the underlying actions.

dismissal of the underlying plaintiffs' claims. On-Target argued the initial judge had determined that at the time of the accident, Perez's van was being used "in connection with" On-Target's business because On-Target facilitated and arranged for Perez's transportation of the employees—the underlying plaintiffs—to and from the Mr. Cookie Face, Inc. worksite and On-Target "wanted to assure its customer[] that the workers would get there on time."

On-Target also asserted Perez's van was a covered "non-owned vehicle" under the policy because the underlying plaintiffs were not working as On-Target employees when the accident occurred. On-Target alleged the initial judge's findings established Perez's van qualified as a covered "non-owned vehicle" under the policy such that Zurich was obligated to provide On-Target a defense in the underlying actions.

On-Target and Zurich Cross-Move for Summary Judgment

Following discovery, On-Target moved for summary judgment on its declaratory judgment and breach of contract claims, and Zurich cross-moved for summary judgment dismissal of On-Target's complaint. In support of its motion, On-Target submitted a short statement of material facts in accordance with Rule 4:46-2(a) describing the procedural history of the matter, quoting the pertinent provisions of the policy, and providing limited averments of fact

10

pertaining to Perez's transportation and the occurrence of the accident. Zurich filed a response to On-Target's statement of material facts and a counterstatement of material facts in accordance with Rule 4:46-2(b). On-Target later filed a response to Zurich's counterstatement.

The Summary Judgment Record

In our de novo review of the summary judgment record on the cross-motions, we must consider the parties' Rule 4:46-2 statements because we apply the same standard as the trial court. Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023). We therefore summarize the limited facts supported by the parties' Rule 4:46-2 statements because they provide the context for our de novo review of the court's orders.

The parties' Rule 4:46-2 statements detail the provisions of the insurance policy they contend support their respective positions concerning On-Target's coverage claims. The statements establish Zurich issued a commercial insurance policy to On-Target that included a commercial auto liability policy (the auto policy) and a commercial general liability policy (CGL policy) for the period between July 1, 2016 and July 1, 2017.

> The auto policy states Zurich will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and

11

resulting from the ownership, maintenance or use of a covered "auto."

[(Emphasis added).]

The auto policy designates two categories of covered "autos" for which On-Target has coverage under the policy, "Hired 'Autos' Only" and "Non-Owned 'Autos' Only."

The auto policy defines "Hired 'Autos' Only" as:

> Only those "autos" [On-Target] lease[s], hire[s], rent[s] or borrow[s]. This does not include any "auto" [On-Target] lease[s], hire[s], rent[s] or borrow[s] from any of [its] "employees[,]" partners (if [On-Target is] a partnership), members (if [On-Target is] a limited liability company) or members of their households.

Covered "Non-Owned 'Autos' Only" under the auto policy include:

> 1. Only those "autos" [On-Target does] not own, lease, hire, rent or borrow that are used in connection with [On-Target's] business. This includes "autos" owned by [On-Target's] "employees[,]" partners (if [On-Target is] a partnership), members (if [On-Target is] a limited liability company) or members of their households but only while used in [On-Target's] business or . . . personal affairs.
>
> 2. Non-Owned "Autos" includes "autos" [On-Target does] not own, lease, hire, rent or borrow that are used by a "staffing services worker" or a "PEO worker" in connection with [On-Target's] client's business.

12

The auto policy also includes an Employee Indemnification and Employer's Liability exclusion, stating the coverage does not apply to:

"Bodily Injury" to

a) An "employee" of the "insured" arising out of and in the course of:

1) Employment of the "insured"; or

2) Performing the duties related to the conduct of the "insured's" business

Under the auto policy, that exclusion applies:

1) whether the "insured" may be liable as an employer or in any other capacity; and

2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Under the auto policy, an "employee" includes a "leased worker," which is defined as "a person leased to [On-Target] by a labor leasing firm under an agreement between [On-Target] and the labor leasing firm to perform duties related to the conduct of [On-Target's] business." "Temporary worker[s]" are not "employee[s]" under the auto liability provision of the policy.

As noted, the policy issued by Zurich also includes coverage under an incorporated CGL policy. The parties' Rule 4:46-2 statements establish the CGL policy states in pertinent part as follows:

1. Insuring Agreement

a. [Zurich] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily [i]njury" or "property damage" to which this insurance applies.

2. Exclusions

This insurance does not apply to:

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading[.]"

This Exclusion applies even if the claims against the insured allege negligence or other wrongdoing in the supervision, hearing, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or tented [sic] or loaned to any insured.

In their Rule 4:46-2 statements, the parties agree that On-Target tendered a claim under the policy to Zurich related to the personal injury claims asserted by the underlying plaintiffs against On-Target in the underlying actions.  Zurich disclaimed coverage on the grounds Perez's van was not a covered auto under either the "Hired 'Autos' Only" or "Non-Owned 'Autos' Only" provisions of the

14

auto policy. Zurich also asserted there was no coverage under the automobile liability policy based on the Employee Indemnification and Employer's Liability exclusion.

The parties' <u>Rule</u> 4:46-2 statements also establish only the following additional, sparse facts. On July 1, 2016, Perez and the underlying plaintiffs were employees of On-Target, and "at the end of the workday" the underlying plaintiffs "entered Perez'[s] van to return to the On-Target offices."[6] The <u>Rule</u> 4:46-2 statements further establish that On-Target deducted funds from the underlying plaintiffs' paychecks to pay Perez "for his contracted transportation services."

The parties agree that "[a]t the time of the accident, the van was being driven by . . . Perez, who was also an employee of On[-]Target." In its <u>Rule</u>

_____

[6] In its <u>Rule</u> 4:46-2(a) statement of material facts, On-Target asserted that Perez had entered into a contract with On-Target pursuant to which Perez provided transportation to and from the worksite in exchange for On-Target's agreement to withhold money from the underlying plaintiffs and pay the money to Perez. In support of the assertion, On-Target cited to the supporting certification of its counsel, but counsel's certification did not cite to any competent admissible evidence supporting the claimed fact. <u>See</u> <u>R.</u> 4:46-2(a). Instead, counsel cited to the fact findings made by the initial judge in his opinion denying On-Target's initial motion for summary judgment on the underlying plaintiffs' personal injury claims. As we explain, those findings were not binding on the motion court and similarly are not binding on the parties or this court, and do not constitute competent evidence supporting an assertion of fact under <u>Rule</u> 4:46-2(a).

4:46-2(a) statement of material facts, however, On-Target asserted that at the time the accident occurred, Perez acted as an agent and principal of On-Target, citing the initial judge's decision as the putative competent evidence supporting those asserted facts. Zurich denied the assertions, claiming the initial judge had found only that the status of Perez's relationship at the time the accident occurred was "a question of agency . . . for the jury." In other words, although neither party cited to competent evidence supporting their factual assertions, it is clear the parties disagreed about Perez's status as a putative employee, independent contractor, or something else while he transported the underlying plaintiffs at the time of the accident.

The parties' <u>Rule</u> 4:46-2 statements establish that while driving back from the Mr. Cookie Face, Inc. worksite, Perez lost control of the van causing a crash and injuries to the underlying plaintiffs. Other than those cursory facts that were established as undisputed in the <u>Rule</u> 4:46-2 statements, the parties offered no other facts in accordance with the Rule in support of their cross-motions for summary judgment.

Following argument, the motion court issued a written statement of reasons quoting various provisions of the policy and citing the putative factual findings of the initial judge in his opinion on On-Target's first summary

judgment motion in the underlying actions. The motion court also relied on portions of Perez's deposition testimony as establishing facts—none of which is included in the parties' respective Rule 4:46-2 statements—supporting its conclusion there is no coverage under the policy.

In sum, the motion court found On-Target is not entitled to coverage under the "Non-Owned 'Autos' Only" provision because it provides coverage for autos that are not hired, and the court determined the undisputed facts established On-Target had hired Perez's van to transport the underlying plaintiffs from the worksite. The motion court further found that although On-Target had hired Perez's van to transport the underlying plaintiffs, On-Target was not entitled to coverage under the "Hired 'Autos' Only" provision because it does not apply to autos hired from employees, and the initial judge had found Perez was an On-Target employee.[7]

---

[7] The motion court erred by finding the initial judge had determined Perez was an On-Target employee as he drove the van at the time of accident. In his decision denying On-Target's first summary judgment motion in the underlying actions, the initial judge found that it "appears that for purposes of transporting the workers back and forth to the" worksite, Perez was On-Target's "agent," who "was also an" On-Target "employee." Apparently, based on the record presented in support of On-Target's first summary judgment motion, the initial judge "assume[d]" that Perez "would drive the people to the" worksite, and "then actually punch in himself and work at the [Mr.] Cookie Face[, Inc.]" worksite. The initial judge thus found that Perez's transportation of the On-Target

The motion court did not make any express findings as to On-Target's claim of coverage under the "Non-Owned 'Autos' Only" provision of the policy. Based on our review of the court's written statement of reasons, however, we discern that it understood the provision applies only to autos On-Target did not "own, lease, hire, rent or borrow that are used in connection with [its] business," and that it concluded there is no coverage because it was bound by the initial judge's determination On-Target had hired Perez's van to transport the underlying plaintiffs when the accident occurred.[8]

employees in his van "was really a side operation that [Perez] was running." The court then identified a fact issue concerning Perez's transportation of the On-Target employees—including the underlying plaintiffs—stating, "[w]hether a principal, such as On-Target, is vicariously liable for the acts of an independent contractor, such as . . . Perez, is a jury question consisting of several factors that must be weighed and evaluated." (Emphasis added). Thus, contrary to the motion court's finding, the initial judge did not determine Perez was On-Target's employee when he drove the van at the time of the accident.

[8] The motion judge separately determined On-Target had hired Perez's van to transport the underlying plaintiffs but based its determination on portions of Perez's deposition testimony that it had determined established facts that had not been submitted in accordance with the requirements of Rule 4:46-2. As noted, the court erred by relying on the deposition testimony because the purported facts for which the court cited the testimony were not presented by the parties in their respective Rule 4:46-2 statements and do not provide proper support for a determination of a summary judgment motion. See Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998) (explaining a court need only consider the facts properly raised to the motion court in the parties' Rule 4:46-2 statements).

The motion court further found no coverage for the accident and van under the CGL policy because the van was excluded under the aircraft, auto or watercraft exclusion. The motion court explained the provision excluded from coverage bodily injury claims arising out of "ownership, maintenance, use or entrustment to others" of an auto operated by "any insured." The court found the exclusion applied because Perez was an On-Target employee performing duties within the scope of his employment, or duties related to the conduct of On-Target's business, when the accident occurred, and therefore, Perez was within the definition of an "insured" under exclusion in the CGL policy.

The court entered an order denying On-Target's motion for summary judgment and granting Zurich's cross-motion for summary judgment. This appeal followed.

## II.

As noted, we conduct a de novo review of a summary judgment order using the same standard that governs the trial court. Crisitello, 255 N.J. at 218. Our analysis accords no deference to the trial court's interpretation of the law. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014).

Under our Rules of Court, summary judgment must be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We consider "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

In making that decision, we must first determine whether the moving party has presented undisputed material facts establishing an entitlement to judgment as a matter of law. R. 4:46-2. Under the Rule:

> [A] party moving for summary judgment is required to submit a "statement of material facts . . . set[ting] forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted."
>
> [Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(a)).]

Rule 4:46-2 further prescribes the manner in which a party opposing a summary judgment motion must contest the moving party's statement of material facts. "[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the

movant's statement.'" Ibid. (quoting R. 4:46-2(b)). "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." R. 4:46-2(b).

Rule 4:46-2's requirements are not procedural niceties that may be ignored by the parties or the court. The requirements impose a "relatively undemanding burden," but they are "critical," Housel v. Theodoridis, 314 N.J. Super. 597, 604 (App. Div. 1998), and are "designed to 'focus [a court's] . . . attention on the areas of actual dispute' and [to] 'facilitate the court's review' of the motion," Claypotch, 360 N.J. Super. at 488 (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:46-2 (2003)).

A court therefore must decide a motion for summary judgment based on the "factual assertions . . . that were . . . properly included in the motion[s] [for] and [in opposition to] . . . summary judgment" in accordance with Rule 4:46-2. Kenney, 308 N.J. Super. at 573; see also Lombardi v. Masso, 207 N.J. 517, 549 (2011) (Rivera-Soto, J., dissenting) (stating a trial court must decide a summary judgment motion "[b]ased on the [Rule]-defined, specifically tailored summary judgment record before it"). Thus, in our de novo review of the court's order on

the cross-motions for summary judgment, we may properly consider only "those [properly included] factual assertions" in the parties' <u>Rule</u> 4:46-2 statements in our determination of the facts relevant to the legal issues presented. <u>See</u> <u>Kenney</u>, 308 N.J. Super. at 573.

For reasons we explain, and unlike the motion court and the parties on appeal, we do not consider or rely on the initial judge's findings of fact as appropriate support for a determination of the parties' cross motions. We also do not consider the motion court's findings of fact, or the parties' arguments, that are not grounded in the <u>Rule</u> 4:46-2 statements, but instead were gleaned by rummaging through deposition transcripts. We therefore do not consider the parties' numerous factual assertions in their briefs on appeal that are apparently based on deposition transcripts and other discovery but were never set forth as required in their <u>Rule</u> 4:46-2 statements. In short, in our de novo review of the court's orders, we limit our determination of the undisputed facts to those that were presented to the motion court in accordance with the rules.

In any event, we note that contrary to the motion court's oft-repeated finding, it was not bound by the initial judge's factual findings. The initial judge's findings were based on a different summary judgment record presented by different parties—On-Target and the underlying plaintiffs—and addressed a

wholly different issue: whether the underlying plaintiffs' personal injury claims were barred under the WCA. In contrast, the cross-motions presented the motion court with a separate legal issue—whether Zurich owed On-Target coverage under the policy—between different parties—On-Target and Zurich—based on the very limited facts set forth in the Rule 4:46-2 statements filed in support of those cross-motions.

Additionally, the motion court did not cite to any legal authority supporting its determination that it was bound by the findings of the initial judge and, in their briefs on appeal, the parties do not offer any authority supporting the motion court's determination that it was bound by the factual findings of the initial judge. And, because the separate summary judgment motions were between different parties, involved the determination of different legal issues, were based on different summary judgment records, and the initial judge's order denying On-Target's motion was not final, the motion court was not bound by the initial judge's factual findings under the doctrines of collateral estoppel or res judicata. See generally Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J. 67, 85 (2012) (explaining the proofs required for application of the doctrine of collateral estoppel); Rippon v. Smigel, 449 N.J. Super. 344, 367 (App. Div. 2017) (explaining requirements for application of the doctrine of res judicata).

Nor was the motion court bound by the findings of the initial judge under the "law of the case doctrine, which exists to 'prevent relitigation of a previously resolved issue' in the same case." Devers v. Devers, 471 N.J. Super. 466, 471 (App. Div. 2022) (quoting Lombardi, 207 N.J. at 538). The initial judge's findings were made in a wholly different case than the one at issue in this appeal.

The motion court also erred by relying on purported facts that were not proffered in support of the cross-motions accordance with Rule 4:46-2. In making its decision on the cross-motions, the motion court relied on its review of Perez's deposition testimony to support its finding of purported facts the parties did not include in their Rule 4:46-2 statements, were not subject to the review process required under the Rule, and fell outside the record that could be properly considered by the motion court and this court in our de novo review of the cross-motions. See Kenney, 308 N.J. Super. at 573; see also R. 4:46-2.

We therefore consider the parties' arguments on appeal solely in the context of the facts properly presented in the parties' Rule 4:46-2 statements. And, for the reasons we explain, we find those facts are wholly inadequate to support a determination that either party is entitled to judgment as a matter of law. However, we first address the principles that guide our interpretation of the provisions of the policy.

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). "[T]he words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990). When the policy language is "unambiguous, the court is bound to enforce the contract as it finds it." Kook v. Am. Sur. Co., 88 N.J. Super. 43, 52 (App. Div. 1965). By contrast, when the policy language is ambiguous, it is to be "construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Flomerfelt, 202 N.J. at 441; Lundy v. Aetna Cas. & Sur. Co., 92 N.J. 550, 559 (1983).

A policy's exclusions, while presumptively valid, "must be narrowly construed," with the burden being "on the insurer to bring the case within the exclusion." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997). An "insured is entitled to protection to the full extent that any reasonable interpretation of [exclusionary clauses] will permit." S.N. Golden Ests., Inc. v. Cont'l Cas. Co., 293 N.J. Super. 395, 401 (App. Div. 1996) (quoting Ruvolo v. Am. Cas. Co., 39 N.J. 490, 498 (1963)); see also Zacarias v. Allstate Ins. Co.,

168 N.J. 590, 595 (2001) ("courts interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning.").

On-Target argues the motion court erred by failing to properly apply these well-established legal principles and by improperly applying what it contends are undisputed facts to find it is not entitled to coverage under the policy as a matter of law. On-Target claims the court erred by finding it hired Perez's van to transport the underlying plaintiffs and by concomitantly finding coverage for the underlying plaintiffs' claims turned on the application of the "Hired 'Autos' Only" provision of the auto policy. On-Target further argues that even if Perez's van was a hired auto under the policy, the court incorrectly found it is not entitled coverage by erroneously concluding Perez was its employee while transporting the underlying plaintiffs at the time of the accident.

On-Target argues it is entitled to coverage under the "Non-Owned 'Autos' Only" provision because it did not hire Perez's van, the van was owned by an On-Target employee, Perez, and Perez was using it in connection with On-Target's business when the accident occurred. In the alternative, On-Target argues the court erred by finding it is not entitled to coverage under the CGL provisions of the policy.

Relying on purported facts never referenced in the parties' Rule 4:46-2 statements and, in part, on the initial judge's purported factual findings, Zurich argues the motion court correctly determined On-Target hired the van and Perez was an On-Target employee such that there is no coverage under the "Hired 'Autos' Only" provision. Based on that conclusion, Zurich argues the "Non-Owned 'Autos' Only" provision is inapplicable. Zurich further claims there is no coverage under the CGL policy because it excludes coverage for bodily injury arising out of the use of an auto owned by an insured, and On-Target's employee, Perez, while acting within the scope of his employment or performing duties related to the conduct of On-Target's business, is an insured under the policy.

The parties' respective legal arguments are based on wholly different factual assertions, almost all of which find no support in the parties' Rule 4:46-2 statements. Indeed, the parties' arguments present a paradigm of the need for strict compliance with Rule 4:46-2 because, without it, a court lacks the means for testing the factual assertions of the parties to determine, as it must, whether the undisputed facts establish a party's entitlement to judgment as a matter of law. Based on our review of the summary judgment record presented to the court in accordance with Rule 4:46-2, we are convinced there are numerous facts

27

pertinent to a determination as to whether there is coverage under the policy and a record bereft of undisputed facts as to any of them.

For example, under the policy's plain language, the determination of whether an auto qualifies as a covered hired auto is dependent on a number of facts. Pertinent here, it must be determined whether On-Target hired Perez's van in the first instance, and, if so, whether the van had been hired from Perez in his role as an employee.[9]

The term "hired" is not defined in the policy. We therefore apply the ordinary meaning of the term in our interpretation of the policy. Longobardi, 121 N.J. 530, 537. "Our courts endorse the use of dictionaries or thesauruses to determine the ordinary meaning of words in insurance policies." Bardis v. Stinson, 444 N.J. Super. 227, 235 (App. Div. 2014) (collecting cases), rev'd on other grounds, 224 N.J. 448 (2016). In its ordinary usage, "hire" is defined as "[t]o engage the labor or services of another for wages or other payment," "[t]o procure the temporary use of property . . . at a set price," or "[t]o grant the

---

[9] We recognize the "Hired 'Autos' Only" provision applies to autos that On-Target "lease[d], hire[d], [r]ente[d], or borrowe[d]," but we consider solely whether the summary judgment record supports a finding the van was hired because the parties argue only about whether it was hired. The parties present no argument concerning coverage for the van as a leased, rented, or borrowed auto. We therefore do not consider or decide whether the evidence established the van was leased, rented, or borrowed.

temporary use of services." Black's Law Dictionary 877 (11th ed. 2019); see also Merriam Webster's Collegiate Dictionary 589 (11th ed. 2020) (defining "hire" as "to engage the personal services of for a set sum"; "to engage the temporary use of for a fixed sum"; or "to grant the personal services of or temporary use of for a fixed sum").

The sparse facts provided in the parties' Rule 4:46-2 statements do not permit a determination as to whether On-Target hired Perez's van under the first of the dictionary definitions of the term. The record does not establish that On-Target "engage[d]" Perez to provide the transportation or "engage[d]" Perez to provide the transportation "for wages or other payment" or a "set sum." Indeed, the record does not establish who engaged Perez to provide the transportation—On-Target, the underlying plaintiffs, or someone else—or the details and nature of the arrangement—including who agreed to pay for Perez's services. In the absence of evidence establishing undisputed facts as to those issues, it is not possible to determine under the first quoted definition of "hire" whether Perez's van falls within the "Hired 'Autos' Only" provision of the auto policy. The motion court erred by finding otherwise.

We also cannot ignore the dictionary definitions of "hire" include engaging the temporary "use" of an item or a personal service for a fixed sum,

29

Black's Law Dictionary, 877; Merriam Webster's Collegiate Dictionary, 589, and those definitions have been applied by other courts to determine the meaning of hired auto insurance provisions. In Selective Way Insurance Co. v. Travelers Property Casualty Co. of America, the United States District Court for the Eastern District of Pennsylvania considered the meaning of the term "hire" in an auto policy based on a dictionary definition defining the term as "[t]o engage the temporary use of for a fixed sum." 724 F.Supp. 2d 520, 526 (E.D. Pa. 2010). The court explained that "to use" requires "an element of control" such that "[t]he key inquiry regarding whether an automobile will fall within the hired automobiles provision of the [insurance] policy is whether the insured exercises dominion, control or the right to direct the use of the vehicle." Ibid. (quoting Lee R. Russ & Thomas F. Segalla, Couch on Insurance §118.46, at 118-74 (3d ed. 1997)). The court further noted the numerous cases holding that an auto falls within a hired auto provision of an insurance policy where the insured exercised "an element of control" over the auto. See id. at 526-27 (collecting cases).

We need not address the parameters of the control required to establish that an auto was hired under the temporary-use-for-a-fixed sum definition of the term "hire." That is because the parties' Rule 4:46-2 statements do not offer any facts permitting a determination as to whether On-Target exercised any degree

of control over Perez's van. We note only that in the absence of such facts, we cannot address or determine whether the van constituted a hired auto under the "Hired 'Autos' Only" provision, and nor could the motion court.

The "Hired 'Autos' Only" provision further excluded autos hired from On-Target's employees. Thus, even if it could be determined Perez's van was a hired auto, there is no coverage if On-Target hired the van from an employee. To be sure, the Rule 4:46-2 statements established Perez was "also an employee of" On-Target, but the record does not include facts establishing whether the van was hired from Perez in his capacity as an employee, and the record otherwise establishes the accident occurred as Perez drove the van after the completion of the workday of the On-Target employees, including Perez, from the Mr. Cookie Face, Inc. worksite.

Put differently, the Rule 4:46-2 statements do not reference or establish facts permitting a determination of Perez's status such that it can be concluded as a matter of law that On-Target hired the van from Perez in his role as an employee. The law recognizes a distinction between an employee and an independent contractor, and "[a]n individual may be considered an employee for some purposes but an independent contractor for others." MacDougall v. Weichert, 144 N.J. 380, 388 (1996). The distinction presents a complex, fact-

specific legal determination, and a court must "look beyond the label" the parties themselves have given to the work. D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 122 (2007); see also Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 380-81 (App. Div. 2017) (explaining standards for differentiating employees and independent contractors).

We offer no opinion as to whether On-Target hired the van from Perez under the policy and if so, whether On-Target hired the van from Perez in his role as an employee, an independent contractor, or something else. We conclude only that the summary judgment record did not establish undisputed facts in accordance with Rule 4:46-2 permitting a determination as to whether Perez was an employee under the "Hired 'Autos' Only" provision such that there is no coverage under the policy even if On-Target had hired the van or the transportation services from Perez.

Similarly, the record is bereft of undisputed facts permitting a determination that On-Target is entitled to coverage under the "Non-Owned 'Autos' Only" provision as a matter of law. A determination as to whether there is coverage under the provision is dependent on whether On-Target hired Perez's van and, if not, whether the van was owned by an On-Target "employee" and was being "used in" On-Target's "business or personal affairs" when the accident

occurred. The parties' Rule 4:46-2 statements do not provide any facts addressing those issues and we are therefore unable to determine as a matter of law whether Perez's van constituted a "Non-Owned 'Auto[]'" under the policy.

The record similarly lacks sufficient facts established in accordance with Rule 4:46-2 to determine as a matter of law whether the Employee Indemnification and Employer's Liability exclusion bars coverage under the auto policy or whether plaintiff is entitled to coverage under the CGL policy. In short, the parties' Rule 4:46-2 statements establish so few facts that the factual bases necessary for a coverage determination under the policy are absent from the summary judgment record. As a result, the motion court was required to deny On-Target's summary judgment motion as well as Zurich's cross-motion because neither party established on the undisputed facts they were entitled to judgment as a matter of law. See Kenney, 308 N.J. Super. at 573. We therefore affirm the court's order denying On-Target's motion, reverse the order granting Zurich's cross-motion, and remand for further proceedings.[10]

---

[10] Our brief discussion of some of the factual issues pertinent to a determination of coverage under the policy is illustrative only and is not intended to exhaustively define the policy terms or the fact issues that may be pertinent to a determination of coverage under the policy. Nor is our discussion of the issues or our remand an expression of an opinion on the merits of the parties' respective arguments concerning coverage under the policy. On remand, the parties shall

We also observe On-Target's complaint sought a defense from Zurich under the policy, but the parties' arguments in support of their respective motions, and the motion court's decision, focused solely on whether On-Target is entitled to indemnification under the policy. Thus, it appears the motion court was not asked to make a coverage determination in accordance with Flomerfelt, where the Court explained:

> An insurer's duty to defend an action brought against its insured depends upon a comparison between the allegations set forth in the complainant's pleading and the language of the insurance policy. In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation.
>
> In evaluating the complaint for this purpose, doubts are resolved in favor of the insured and, therefore, in favor of reading claims that are ambiguously pleaded, but potentially covered, in a manner that obligates the insurer to provide a defense. Similarly, if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all the covered claims have been resolved.
>
> [202 N.J. at 444 (citations omitted).]

---

be permitted to make whatever arguments they deem appropriate concerning the meaning of the policy terms and the facts pertinent to a determination of coverage under the policy that are supported by the record presented and the applicable legal principles. And, the remand court, shall decide the issues—either at a trial or in response to motions by the parties—based on the record presented.

We do not address whether On-Target is entitled to a defense under the Flomerfelt standard because the issue was not addressed or decided by the motion court in the first instance. See, e.g., Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018) (explaining that although an appellate court conducts a de novo review of a summary judgment order, its "function . . . is to review the decision of the trial court, not to decide the motion tabula rasa"). We do not preclude On-Target from seeking a determination on its claimed entitlement to a defense under the under the Flomerfelt standard on remand.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION